**SELLERS et al. v. JOHNSON et al.**

**No. 13500.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 20, 1947.

Hayden C. Covington, Brooklyn, N. Y., for appellants.

W. B. Sloan, of Des Moines, Iowa (J. O. Watson, Jr., of Indianola, Iowa, and Herrick, Sloan & Langdon, of Des Moines, Iowa, on the brief), for appellees.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment dismissing the complaint in an action the purpose of which was to vindicate and establish the constitutional right of Jehovah's witnesses to hold religious meetings and to preach their religion without molestation or interference in the public park of the Town of Lacona, Warren County, Iowa.

The controversy grows out of an attempt by what is known as the Des Moines company or congregation of Jehovah's witnesses to hold a series of religious meetings in the park of the Town of Lacona on four successive Sundays, commencing September 1, 1946. Warren County is in the missionary field of the Des Moines company of Jehovah's witnesses, the members of which believe themselves to be under a covenant with Almighty God to preach the gospel from door to door and from house to house and in public places.

The Des Moines company of Jehovah's witnesses procured the consent of two Councilmen of the Town of Lacona for the holding of the first meeting, which was advertised and held as planned on September 1, 1946. The speaker on that occasion was harassed and interfered with, but he succeeded in delivering his Bible lecture on "Religion as a Peacemaker." Some of the residents of the Town, on September 1, prior to the meeting, protested to the Mayor and one of the Councilmen against permitting the Jehovah's witnesses to use the park.

The Mayor advised the protestants that he would not try to stop the meeting—that there was no law to prevent the meeting, and he "talked them out of any trouble." Those who protested were "the Daugherty boys, the Neers" and "William Baker." The record indicates that, in spite of the Mayor's admonition, the leaders of those who harassed the speaker at the first meeting were the Daughertys and the Neers. The Mayor went to the park just before the meeting and asked Charles E. Sellers, the presiding minister of the Des Moines company, "if they wouldn't call off the next meeting, that I didn't know whether I could keep the G.I. boys down." After the first meeting was over, Marvin Neer and Stanley Daugherty threatened that the Jehovah's witnesses would not be allowed in the park any more.

On September 2, the Town Council adopted a resolution providing "that the Lacona City Park or Public Square cannot be used for any meetings or congregations of any kind unless it be brought up before the Town Council and voted on." The Jehovah's witnesses were not notified of the adoption of this resolution until after September 8, 1946. This was the first restriction ever placed upon the use of the park.

On September 8, when the Jehovah's witnesses attempted to hold their meeting in the park, they found a large number of people—probably 700 or 800—in and around it. The bandstand in the park, which had been used as a speaker's platform at the meeting of September 1, was occupied. Among those in the bandstand were Stanley and William Daugherty and Marvin Neer. Benches in the park were turned over, so that old ladies who had come to attend the lecture to be given by the Jehovah's witnesses could not sit down. Children were encouraged to play baseball, thus to interfere with the meeting. The Jehovah's witnesses did not attempt to use the bandstand, but endeavored to set up their sound equipment in another part of the park. The men who were in the bandstand then rushed down to the group which had the sound equipment, "cursing and yelling there would be no talk held that Sunday or any other Sunday." The Jehovah's witnesses formed a circle around the microphone to protect it.

They were attacked, but defended themselves and the sound equipment. There were numerous fist fights, with the usual results—bloody faces, black eyes, broken glasses and teeth, and torn clothing. The Daughertys and the Neers took part in the attack and in the fighting. In anticipation of what occurred, the Jehovah's witnesses were not unprepared to defend themselves. They had unsuccessfully sought protection from the local and State authorities. The Mayor was attending a family reunion in another town during the fighting. The Sheriff, who lived in Indianola, was not available, and the Town Marshal, if present, did nothing so far as the record indicates. All of these officials were on hand after the fighting was over. The Jehovah's witnesses then agreed with the Sheriff that it would not be possible to hold the meeting that day and that they would leave. The Sheriff announced to those in the park that the meeting was over and that they could go away. He saw to it that the Jehovah's witnesses got into their cars without further molestation.

On September 10, the Town Council adopted a resolution providing "that Mayor Goode serve notices on C. E. Sellers of the Jehovah's Witnesses that the town council have prescribed Rules for the use of the public park in Lacona, and that they will have to have permission from the council before holding meetings in the park, or this will be deemed an unlawful act and be punished as such." The Mayor, on September 11, wrote a letter to C. E. Sellers, giving him the notice prescribed by the resolution. The resolution was passed upon the advice of two deputies of the Attorney General of the State of Iowa, after a conference between them, the Mayor, the City Attorney of Lacona, the Sheriff, and the County Attorney of Warren County.

On September 14, the Town Council, by a resolution, authorized the Mayor to deputize special marshals and peace officers to maintain peace and order. On the same day the attorney for the Town, the County Attorney of Warren County, Mayor Goode, and the Sheriff conferred with two of the Attorney General's deputies. The Sheriff was advised not to permit any meeting of any kind in Lacona on the following day and to blockade the Town. That met with the approval of all the attorneys present. The Sheriff saw the Director of Public Safety of Iowa and was advised that he would have highway patrolmen on hand to handle traffic.

There was a mass meeting of 250 or 300 people in the park at Lacona on the evening of September 14, at which the Mayor introduced the Sheriff. The Sheriff announced that there would be no meetings of any kind in Lacona on September 15; that the ball games and a family reunion which had been planned had been cancelled, and that those living outside of Lacona who wished to attend church in the Town should go elsewhere.

On September 14, the Mayor and Sheriff were handed a letter signed by Charles E. Sellers, complaining of the violation of the civil rights of the Jehovah's witnesses on September 8, 1946, and of the failure of the local authorities to furnish police protection. The letter stated that the Jehovah's witnesses would continue with their planned public meetings in Lacona.

On Sunday, September 15, the Sheriff, with the assistance of about 100 special deputies and some State highway patrolmen, blockaded all the highways leading into the Town. Everyone approaching the Town on the highways was turned away, except a doctor and a few residents who were returning home. The Jehovah's witnesses from Des Moines reached the blockade, and were turned back after being told by the Mayor and the Sheriff that they could not hold their scheduled meeting.

On September 25, Charles E. Sellers wrote a letter to the Mayor and Councilmen of the Town, stating that the Jehovah's witnesses felt that it was necessary to continue their Bible lectures and would like permission to use the park for that purpose on Sunday, September 29, 1946, at 2:00 P. M. In the letter Sellers asserted that the constitutional rights of freedom of speech, assembly and worship had been infringed in Lacona, and stated that it might be well to consider "that the Constitution of the United States precludes the city from requiring a permit as a condition precedent to

using the park." He also stated that the Jehovah's witnesses would hold the meeting whether they received a permit or not. The letter was presented to the Town Council on September 27, which then voted to deny the Jehovah's witnesses permission to use the park for a meeting on September 29.

The appellants (who will be referred to as plaintiffs) brought this action for themselves and as a class action for others of the Jehovah's witnesses similarly situated in the State of Iowa, on September 26, 1946, against the Sheriff of Warren County, the Mayor of the Town of Lacona, and the Town Marshal, as individuals and in their official capacity, and the Town itself, to restrain and redress the deprivation of the plaintiffs' civil rights of freedom of assembly, speech, and worship, and those of others of Jehovah's witnesses. The action is based primarily upon the Civil Rights Act of 1871, as amended, 8 U.S.C.A. § 43, which reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The plaintiffs ask for an injunction to restrain the defendants (appellees) from interfering with plaintiffs' rights, from enforcing the resolutions of the Council purporting to require a permit for the use of the park, from barring plaintiffs from the Town, and from interfering with their preaching activities in the park. The plaintiffs also ask for a declaratory judgment declaring that plaintiffs have a constitutional right to use the park for public preaching purposes, and to advertise their meetings and distribute literature in the Town; that the resolutions of the Town Council requiring a permit are void, and that the defendants are without right to eject or deport the plaintiffs and others of Jehovah's witnesses from the Town or to interfere with their preaching activities.

The Sheriff filed a separate answer denying most of the allegations of the complaint. He admitted that the plaintiffs had the constitutional rights which they asserted, including the right to use the park in the Town of Lacona for public meetings lawfully conducted, "subject only to reasonable regulatory and supervisory control of the Town, and to proper exercise of the police power in safeguarding the public welfare." The Sheriff also admitted the blockading of the highways leading into the Town of Lacona on September 15, and alleged that he acted on the advice of counsel for the Town of Lacona, the County Attorney of Warren County, and the office of the Attorney General of the State of Iowa, and for the sole purpose of preventing a breach of the peace and rioting and in order to protect all members of the public, including Jehovah's witnesses.

The Town of Lacona, its Mayor, and its Marshal, in their answer admitted that the plaintiffs had the constitutional rights which they asserted, including a qualified right to use the park, and denied other allegations of the complaint.

After a trial of the case upon the merits, the District Court filed findings of fact, conclusions of law, and an opinion, 69 F. Supp. 778. The court concluded: (1) That the Jehovah's witnesses had a constitutional right to hold their meetings in the public park at Lacona on the dates they attempted to meet; (2) that they had the right to assemble on those dates for peaceful purposes, and that the purposes of their meeting and proposed meetings were peaceful; (3) that the resolutions of the Town Council, passed to prevent the use of the park by Jehovah's witnesses, were unconstitutional and void as against the plaintiffs, but that the resolutions and actions of the Town Council were too inconsequential to warrant injunctive relief; (4) that the defendant Town Marshal was not shown to have done anything which would warrant the issuing of an injunction against him; (5) that the Mayor was not a law-enforcing officer, and merely tried to preserve the peace of the community; (6) that the Sheriff acted to prevent the Jehovah's witnesses from entering the Town of Lacona on September 15, in the belief that that course was nec-

essary in order to prevent riot and bloodshed, and that in so doing he acted "within the scope of his authority and properly under the situation as it then existed"; (7) that "On Sept. 15, 1946, the threat of mob violence in Lacona was apparent and real, substantial and grave, and a clear and present danger to the peace and quiet of the town and the situation warranted the sheriff in barring the plaintiffs from the town, even though it interfered with their right of assembly and free speech"; and (8) "That plaintiffs' petition [complaint] should be and the same is hereby dismissed upon its merits with judgment against the plaintiffs for costs."

■ The theory that a group of individuals may be deprived of their constitutional rights of assembly, speech and worship if they have become so unpopular with, or offensive to, the people of a community that their presence in a public park to deliver a Bible lecture is likely to result in riot and bloodshed, is interesting but somewhat difficult to accept. Under such a doctrine, unpopular political, racial, and religious groups might find themselves virtually inarticulate. Certainly the fundamental rights to assemble, to speak, and to worship cannot be abridged merely because persons threaten to stage a riot or because peace officers believe or are afraid that breaches of the peace will occur if the rights are exercised.

In the case of Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, the Committee on the Bill of Rights of the American Bar Association filed a brief, as amici curiae, in which they had this to say on the subject of anticipated disorder as a basis for the abridgment of constitutional rights (pages 679, 680 of 307 U.S.):

"* * * It is natural that threats of trouble should often accompany meetings on controversial questions. But meetings may not be suppressed on that account. The practice under ordinary conditions in our large cities is for the authorities to arrange with the applicants to have the meeting held in a suitable place, and to have enough policemen on hand to quell apprehended disturbances.

"The real question at issue is whether any threat of disorder, even though only by opponents of the speakers, excuses denial of permits. If so, the right of free assembly will have become a mockery. The right would thus be subject to destruction by an arbitrary official decision, notwithstanding that the Bill of Rights was intended to protect citizens from arbitrary action of that very character.

"To 'secure' the rights of free speech and assembly against 'abridgment,' it is essential not to yield to threats of disorder. Otherwise these rights of the people to meet and of speakers to address the citizens so gathered, could not merely be 'abridged' but could be destroyed by the action of a small minority of persons hostile to the speaker or to the views he would be likely to express."

The Supreme Court, in the Hague case, ruled that uncontrolled official suppression of the privilege of free speech cannot be made a substitute for the duty to maintain order in connection with the exercise of the right. 307 U.S at page 516, 59 S.Ct. at page 964, 83 L.Ed. 1423.

In Whitney v. California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095, Mr. Justice Brandeis, in his concurring opinion—in which Mr. Justice Holmes joined—said (274 U.S. at page 377, 47 S.Ct. at page 649, 71 L.Ed. 1095):

"* * * Prohibition of free speech and assembly is a measure so stringent that it would be inappropriate as the means for averting a relatively trivial harm to society."

Mr. Justice Brandeis also said (274 U.S. at page 378, 47 S.Ct. at page 649, 71 L.Ed. 1095):

"* * * The fact that speech is likely to result in some violence or in destruction of property is not enough to justify its suppression. There must be the probability of serious injury to the State. Among free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech and assembly."

■ It is, in our opinion, not necessary in this case to determine whether State

action which deprives a group of persons of the fundamental constitutional rights of assembly, speech and worship can ever be justified upon the ground that the group is so offensive to the community in which it proposes to meet that the only way to maintain order and to prevent bloodshed is to bar the group from the community. We find no substantial evidence in the record to support the conclusion that the proposed religious meetings of the Jehovah's witnesses in the Town of Lacona were actually fraught with any substantial danger to the peace and welfare of the State of Iowa. The fact that there was disorder in the park on September 8 is fully as consistent with the hypothesis that the disorder was due to the failure of the local and State authorities to police the park as it is with the hypothesis that the unpopularity of the Jehovah's witnesses was so great that the only means of maintaining order in the future was to deny them access to the Town.

The testimony of the Mayor relative to the anticipated disorder in the park on September 15 is, in substance, as follows: That at the mass meeting of the townspeople on September 14 "they told of many reports that the G.I. boys was coming from so many different places there we didn't think we could keep down trouble, and we had the sheriff down there to see what he could do about it"; that during the week between September 8 and 15, the Mayor heard talk that if the meeting of September 15 was held "GIs" were coming from Indianola, Osceola, Chariton, Knoxville, and there was a report that a number were coming from as far as Ottumwa for the purpose of stopping the meeting.

The testimony of the Sheriff on this subject was as follows:

"Q. During the week following September 8th, 1946, and prior to Sunday the 15th, had you heard any rumors or statements about the possibility of trouble in Lacona on the 15th if a meeting was had? A. Yes, I did.

"Q. What had you heard in the way of rumors and statements? A. Well, it had been brought to me there would be hundreds of GIs arrive there the following Sunday if they attempted to hold a meeting of the Jehovah's Witnesses.

"Q. Do you recall whether any outside towns were mentioned as to whether GIs might come from places outside of Lacona? A. Yes. I had the information that they would be there from a number of towns. As much as fifteen hundred, I think the report was from Ottumwa. And Chariton, in fact the sheriff there called me and advised me that he didn't think that he or I could handle the GIs that would be there from Chariton if we permitted a meeting of any kind in Lacona on the 15th.

"Q. During the early part of that week following September 8th some informations had been filed by Jehovah's Witnesses against various people in Lacona, had they not? A. Yes, they had.

"Q. Warrants had been issued on those informations? A. Yes, sir.

"Q. And you served the warrants, did you not? A. I did.

"Q. On various people at Lacona, and arrested them? A. Yes, sir.

\* \* \* \* \* \*

"Q. Did you attend the trials at Indianola that week at which testimony was taken? A. Yes, I did.

"Q. Did you hear descriptions at those trials of the extent of the fighting which had taken place at Lacona that previous Sunday? A. Yes, sir, I did.

"Q. And what, if any, conclusion did that lead you to about the extent and the danger of rioting? A. Well, it led me to believe that it could be awful bad."

No evidence was adduced by the defendants to substantiate any of these rumors or reports upon which the Mayor and Sheriff acted. The Sheriff at Chariton was not called as a witness. No witness testified that there actually was any plan or move on foot to stage a riot at Lacona if the Jehovah's witnesses met there on September 15 to deliver a Bible lecture. There is certainly no presumption that ex-servicemen of normal mentality are in the habit of suppressing religious meetings by violence, no matter what they may think of those who hold the meetings.

While we do not question the good faith of the Mayor or the Sheriff in concluding that the best and easiest way to maintain peace and order in Lacona on September 15 was to blockade the roads leading into the Town, we are convinced that evidence of unconfirmed rumors, talk, and fears cannot form the basis of a finding of the existence of such a clear and present danger to the State as to justify a deprivation of fundamental and essential constitutional rights. We think that is particularly true in a situation where no effort whatever was made to protect those who were attempting lawfully to exercise those rights. There is no evidence that it was beyond the competency of the Sheriff and the Mayor to secure enough peace officers to police the park on September 15. The fact that the Sheriff was able to deputize approximately 100 persons to assist him in blockading the highways leading into Lacona militates against any inference that he would have been unable to preserve law and order in Lacona on September 15. The record shows that the Mayor did not exercise the authority given him by the Town Council to deputize peace officers.

The only sound way to enforce the law is to arrest and prosecute those who violate the law. The Jehovah's witnesses were at all times acting lawfully, and those who attacked them, for the purpose of preventing them from holding their religious meeting on September 8, were acting unlawfully and without any legal justification for their conduct.

█ We think that the plaintiffs were entitled to equitable relief. We think that the relief should be limited to that which is essential. It is a year since the events which gave rise to this action occurred. It fairly may be assumed that when the defendants and the people of Lacona understand that whatever hostility toward the Jehovah's witnesses exists in the community will not justify the abrogation of their right to meet and to deliver Bible lectures in the park in Lacona and that they are entitled to full protection in the exercise of their rights, there will be no further controversy. No one is required to attend the meetings or to listen to the lectures. We agree with the District Court that the evidence indicates that neither the Mayor nor the Sheriff had any feeling of personal animosity toward the Jehovah's witnesses, and that each was acting on the advice of counsel and in the belief that what he did to keep the peace was legally permissible.

We do not agree with the District Court that the resolutions of the Town Council, adopted to prevent the Jehovah's witnesses from using the park without a permit, were inconsequential. The resolutions obviously were passed to establish a basis for treating the Jehovah's witnesses as law violators and to justify barring them from the park.

█ Our conclusion is that the plaintiffs are entitled to a decree declaring: (1) That they and others of Jehovah's witnesses have the right to hold religious meetings in the public park in the Town of Lacona, Iowa, without molestation and without securing the permission of the Town Council; (2) that the resolutions of the Town Council purporting to require the plaintiffs and others of Jehovah's witnesses to obtain a permit to use the park for religious meetings, and purporting to deny them such a permit, are unconstitutional, void and unenforceable; (3) that the Jehovah's witnesses are entitled to be protected in the exercise of their constitutional rights of freedom of assembly, speech and worship; (4) that the action of the Sheriff, sponsored by the Mayor, in blockading public highways leading into the Town of Lacona, for the purpose of preventing the Jehovah's witnesses from holding a meeting in the public park on September 15, 1946, constituted an unlawful deprivation of the constitutional rights of the Jehovah's witnesses.

The decree should contain a clause retaining jurisdiction of the case for the purpose of issuing injunctive orders in the event such orders shall become necessary to secure the plaintiffs against possible future attempts by the defendants, or any of them, to deprive the plaintiffs of their rights.

█ We think the defendants were all proper parties to this action.

The judgment appealed from is reversed, with directions to enter a decree in substantial conformity with this opinion.