**CHRISTIAN KNIGHTS OF THE KU KLUX KLAN INVISIBLE EMPIRE, INC., et al., Plaintiffs,**

v.

**The DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 90–2615–LFO.**

United States District Court, District of Columbia.

Oct. 25, 1990.

As Corrected Nov. 6, 1990.

**213**

Arthur Spitzer, American Civil Liberties Union, Washington, D.C., for plaintiffs.

Charles Reischel, Deputy Corp. Counsel, Washington, D.C., for District of Columbia.

John D. Bates, Michael L. Martinez and John C. Cleary, Asst. U.S. Attys., Washington, D.C., for U.S.

MEMORANDUM

OBERDORFER, District Judge.

I.

Plaintiffs, Christian Knights of the Ku Klux Klan Invisible Empire, seek an injunction against the District of Columbia and certain of its officials or, in the alternative, against the United States for an order requiring one or the other defendants to issue permits authorizing plaintiffs to march on Sunday, October 28, 1990, from the Washington Monument to Capitol Hill. They have valid permits to assemble on the Monument grounds and to demonstrate on the Capitol grounds. Plaintiffs applied to the District of Columbia defendants for a permit to march from the Monument, north on 14th Street, N.W., east on Constitution Avenue, N.W., to its intersection with Pennsylvania Avenue, N.W., and thence to the Capitol grounds. They applied in the alternative to the United States for a permit to march from the Monument grounds, east on Madison Drive on the Mall to 7th Street, N.W., north on 7th Street to Constitution Avenue, N.W., and thence east to the Capitol on part of the route for which they seek a District permit. Plaintiffs prefer the Constitution Avenue route, but would accept a permit for the Madison Drive/Constitution Avenue route. On a prior occasion, September 2, 1990, the District issued a permit for plaintiffs to march the full route on Constitution Avenue. Violence threatened and later ensued. Instead of marching as authorized, plaintiffs acquiesced in a District suggestion that they travel by convoy to the Capitol. Nevertheless, a hostile mob attacked police lines on the route. Plaintiffs were unharmed, but several police officers suffered injuries and there was property damage in the area.

The District defendants have now granted to plaintiffs a permit for a four block march originating at 7th Street, N.W., and thence to 3rd Street at the foot of Capitol Hill, by Constitution and Pennsylvania Avenues, but have denied any permit for a march from 14th Street, N.W., to 7th Street, N.W., and oppose entry of an order against them requiring one. According to a letter dated October 22, 1990, from Isaac Fulwood, Jr., Chief of the Metropolitan Police Department ("MPD"), to Arthur B. Spitzer, Legal Director, American Civil Liberties Union Fund, the MPD could not

adequately ensure public safety for the length of the route proposed ..., given the limitations on our resources and our belief that the parade creates a substantial possibility of violent, disorderly conduct likely to endanger public safety or to result in significant property damage.

The District defendants support their opposition to an injunction against them by an extensive and detailed affidavit by Deputy Chief Thomas L. Carroll, an officer especially experienced in demonstrations and crowd control in this city. According to

Chief Carroll, the law enforcement personnel available at the scene (about 2,500 law enforcement officers—1,500 of whom would be shoulder-to-shoulder along the Avenue with several hundred in reserve there) would be sufficient to maintain order along a route on the Avenue between 7th Street and 3rd Street, but would not be sufficient, without the use of chemical and other lethal weapons, to assure order over the longer route for which plaintiffs seek a permit. At the hearing, Chief Carroll estimated that to assure the non-violent control requisite for a permit, 1,000 additional law enforcement personnel would be required, and he had no present plans or means to obtain them.

United States officials have not yet acted on the application to them. The United States agrees with plaintiffs that they have a constitutional right to march from the Monument to the Capitol and the United States vigorously advocates the route along Constitution Avenue in preference to a segmented route along Madison Drive and up 7th Street to the Avenue and thence to the Capitol. United States officials declare that the Park Police consist of only 500 officers nationwide, with 300 available for the Madison Drive segment of the march, and cannot adequately maintain order along that route without reinforcement from several hundred MPD officers at places designated by the Park Police. MDP has refused to make those officers available at these places on the theory that the officers so requested would be required by the MPD as a reserve to stand hard by the four block segment on Constitution Avenue for which MPD is willing to accept responsibility. Counsel for the United States represents that it would supply all the additional resources required by the circumstances to assist the MPD to protect the plaintiffs, to protect federal property along Constitution Avenue from 14th Street to 3rd Street, and to safeguard the Nation's Capital. But he cites the affidavits of United States' experts who are of the opinion that Chief Carroll overestimates his requirements. Indeed, counsel for the United States referred to these estimates as "incredible." Be that as it

may, however, counsel for the United States represented, as the Court understood him, that even if, contrary to the opinion of the United States' experts, the circumstances required 1,000 additional appropriate law enforcement officers (or their equivalent) to assist the MPD, the United States could not supply them for the occasion. This is also inherently incredible.

## II.

The principles governing decisions on plaintiffs' motions for a temporary restraining order and for a preliminary injunction are well-established.

> To determine whether an injunction is appropriate, the District Court should balance (1) the likelihood of plaintiff's success on the merits, (2) the threat of irreparable injury to the plaintiff in the absence of an injunction, (3) the possibility of substantial harm to other interested parties from a grant of injunctive relief, and (4) the interests of the general public.

*Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir.1987) (footnote omitted); *see also Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n. v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir.1958). Because all four considerations favor the plaintiffs, the accompanying Order will grant plaintiffs' motion as to the District of Columbia. The motion for an injunction against the United States will be denied.

At this preliminary stage, plaintiffs have established that they are likely to succeed on the merits of their claim that they have a First Amendment right to march from the Washington Monument to the Capitol on Constitution Avenue. This route along Constitution Avenue for demonstrations assembling at the Monument and demonstrating at the Capitol is a traditional segment of the Nation's premier public forum.

In *Hague v. Comm. for Indust. Org.*, the Supreme Court observed that

> Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public

and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens.

307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939); *see also Cornelius v. NAACP Legal Defense & Education Fund*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3448-49, 87 L.Ed.2d 567 (1985) (describing parks and public streets as "traditional public fora"). Although some restrictions are of course necessary "in order to assure the safety and convenience of the people," *Cox v. State of New Hampshire*, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941), those restrictions are sharply circumscribed: "The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983).

 Defendant District of Columbia contends that, in limiting the permit to marching from 7th Street, N.W., rather than 14th Street, N.W., they have imposed a reasonable time, place, and manner restriction which does not materially diminish the effectiveness of the expression which plaintiffs seek to make. Such a restriction must, however, "serve a significant government interest." *Id.* In court, the Corporation Counsel reiterated what is clear from Chief Fulwood's letter—that the decision to restrict plaintiffs to the Seventh Street route was primarily based upon concern for the violent reaction anticipated from those who disagree with (indeed loathe) plaintiffs and their message. While concern for safety is certainly a proper government interest, *see Grayned v. City of Rockford*, 408 U.S. 104, 115-16, 92 S.Ct. 2294, 2302-03, 33 L.Ed.2d 222 (1972); *Cox v. State of New Hampshire*, 312 U.S. at 574, 61 S.Ct. at 765, it is not proper grounds for imposing a restriction upon speech when safety is endangered by those hostile to the speaker. Landmark decisions of the Supreme Court establish "that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *See Street v. New York*, 394 U.S. 576, 592, 89 S.Ct. 1354, 1365-66, 22 L.Ed.2d 572 (1969); *Gregory v. City of Chicago*, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131, *reh. denied*, 337 U.S. 934, 69 S.Ct. 1490, 93 L.Ed. 1740 (1949); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). While these cases involve punishment for speech already made, the principle prohibiting the so-called "heckler's veto" is a general one of potent force:

> To allow the intolerance (and threats) of a vocal minority (or even the majority) to determine who shall and shall not speak "would lead to standardization of ideas," *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949) and "would fictionaliz[e] the *rationale* of the First Amendment."

*NAACP Legal Defense & Education Fund v. Devine*, 727 F.2d 1247, 1261 (D.C.Cir. 1984) (final quotation omitted) (emphasis in original), *rev'd on other grounds Cornelius v. NAACP Legal Defense & Education Fund*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3448-49, 87 L.Ed.2d 567 (1985). There is ample precedent that this principle prohibits municipalities from refusing to permit or limit demonstrations on the theory that the demonstrators may be met with violence from those opposing the demonstrators' ideas. *See, e.g., National Socialist White People's Party v. Ringers*, 473 F.2d 1010 (4th Cir.1973); *Kelly v. Page*, 335 F.2d 114 (5th Cir.1964); *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Collin v. Chicago Park District*, 460 F.2d 746 (7th Cir.1972); *Sellers v. Johnson*, 163 F.2d 877 (8th Cir. 1947), *cert. denied*, 332 U.S. 851, 68 S.Ct. 356, 92 L.Ed. 421 (1948). This prohibition

has been applied even when the plaintiffs sought a permit *after* previous demonstrations had been disrupted by violence. *See, e.g., Dr. Martin Luther King, Jr., Movement, Inc. v. City of Chicago,* 419 F.Supp. 667 (N.D.Ill.1976); *Williams v. Wallace,* 240 F.Supp. 100 (M.D.Ala.1965).

With plaintiffs' likelihood of success on the merits established, the other factors in determining whether injunctive relief is necessary fall quickly into line. Plaintiffs have clearly shown the threat of irreparable injury: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). There is no *cognizable* harm threatened to other parties with a substantial interest. The United States will not be harmed by being forced to accommodate the constitutional rights of its citizens; and the District of Columbia suggestion that the threat of injuries and violence should be controlling is not cognizable for reasons already discussed. *See supra* 215. Finally, the interest of the public is in the protection of plaintiffs' First Amendment rights. *See, e.g., Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board,* 578 F.2d 1122, 1127 (5th Cir.1971), *vacated on other grounds,* 454 U.S. 1075, 102 S.Ct. 626, 70 L.Ed.2d 609 (1981).

Accordingly, an accompanying Order will require the District defendants to issue the permit requested by plaintiffs to march from the Monument to the Capitol on Constitution Avenue with the expectation that with the responsibility fixed, District officials and United States officials will resolve their differences and do their duty to enforce the law and protect the Constitution.

### ORDER

For reasons to be stated in an accompanying Memorandum, it is this 26th day of October, 1990, hereby

ORDERED: that defendants District of Columbia, Marion Barry, and Isaac Fulwood, Jr., shall issue a permit authorizing plaintiffs to march from 14th Street, N.W., to the Capitol along Constitution Avenue,

N.W., between the hours of 1:30 P.M. and 4:30 P.M. on Sunday, October 28, 1990; and it is further

ORDERED: that plaintiffs' application for a temporary restraining order and preliminary injunction ordering and enjoining defendant United States to issue a permit to plaintiffs to march along Madison Drive from 14th Street, N.W., to 7th Street, N.W., and Constitution Avenue, N.W., to Capitol Hill, between the hours of 1:30 P.M. and 4:30 P.M. on Sunday, October 28, 1990, is DENIED; and it is further

DECLARED: that, on this record, no court order should be required to assure that the District of Columbia and the responsible officials of the United States will cooperate to perform their sworn duty to enforce the law and to defend the Constitution; and it is further

ORDERED: that plaintiffs shall post a bond of $100.00.