STATE OF MAINE *vs.* RALPH A. PEACOCK.

Penobscot.    Opinion, March 24, 1942.

*Randolph Weatherbee,* County Attorney Penobscot County and

*John H. Needham,* Assistant County Attorney, for the State.

*Hayden Covington,* Brooklyn, N. Y.

*Clarence Scott,* Old Town, Maine.

*Ewing Baskette,* Lexington, Ky., for respondent.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

THAXTER, J.  The respondent was indicted for a violation of Sec. 3 of the Uniform Flag Law. Rev. Stat. 1930, Chap. 128. The section in question, referring to our flag or any representation thereof, reads as follows:

"*Mutilation.* No person shall publicly mutilate, deface, defile, defy, trample upon, or by word or act cast contempt upon any such flag, standard, color, ensign or shield."

The indictment charges that the respondent "on the thirtieth day of June in the year of our Lord one thousand nine hundred and forty at Plymouth in the County of Penobscot, aforesaid, did then and there publicly, by word and act, cast contempt upon the flag of the United States of America, by then and there saying, 'What is the flag anyway? It is nothing more than a piece of rag. If I had an American flag here now I would strip it up and trample it under my feet,' and by then and there moving his hands in front of him as though he were tearing an object, and by then and there stamping his feet on the floor as though he were stamping upon an object, against the peace of the state, and contrary to the form of the statute in such case made and provided." There was a verdict of guilty, and the case is now before this court on exceptions.

The respondent on June 30, 1940, called at the home in Plymouth of Herbert J. Tozier to seek his signature to a petition. He was invited in and it was during the course of the ensuing interview, at which a relative of Tozier's named Moore was present, that the jury as indicated by their verdict apparently found that the respondent spoke the words and did the acts attributed to him in the indictment. An exception was taken to the portion of the judge's charge which relates to the question whether the words were uttered and the acts were done publicly. This is the only exception which we shall consider.

We are concerned with the violation of a penal statute, and the rule of law is well settled that such a statute must be construed strictly. The rule is well stated in *State* v. *Bunker,* 98 Me., 387, 389, 57 A., 95, 96, as follows: "A statutory offense cannot be created by inference or implication, nor can the effect of a penal statute be extended beyond the plain meaning of the language used." See to the same effect *Campbell* v. *Rankins,* 11 Me., 103; *State* v. *Wallace,* 102 Me., 229, 66 A., 476; *State* v. *Peabody,* 103 Me., 327, 69 A., 273. This well established principle is in no respect modified by the provisions of Sec. 6 of the statute with which we are here concerned which

provides as follows: "This chapter shall be so construed as to effectuate its general purpose and to make uniform the laws of the states which enact it." This is but a declaration of a fundamental principle applicable to all statutory construction.

What, therefore, is the general purpose of our statute?

It is apparent that the very essence of this offense is its publicity. The statute is designed to prevent that which would shock the public sense, and because of the publicity accompanying it would be likely to result in breaches of the peace. In condemning only what may be publicly said or done, the law recognizes the futility of attempting, with respect to such a matter as this, to control what one may say or do under other circumstances. In this respect, the offense is similar to the common law crime of affray, and in our own state to the various offenses concerning intoxication and other analogous crimes in which the publicity given to the act is an essential element. *State* v. *McLoon,* 78 Me., 420, 6 A., 601; 19 C. J., 797; 28 C. J. S., 560. In *State* v. *McLoon,* the opinion makes it perfectly clear that intoxication alone, reprehensible as it is, is not an offense, unless accompanied by the elements of publicity set forth in the statute.

The jury were fully warranted in finding that this respondent by his words and acts showed contempt for the flag of our country which those of us who believe in liberty so dearly love. The question before the jury was, did he speak or act "publicly"?

On this point, the judge charged the jury as follows:

"I am going to add something else to what I have said to you, and it relates to my definition of the term 'publicly,' as it is used in the statute and I will say to you that if the acts are performed or the words are spoken in a place where persons have opportunity to come and that there are persons there other than the person uttering the words or doing the acts and with the intent of exhibiting the contempt which he feels for the flag, and that the

words are heard by or the acts seen by others there present, they are done publicly, as the term is used in the statute."

Counsel for the state interpret this charge in the only way in which in our opinion it can be interpreted. What it means, they say in their brief, is that "if the words are spoken, or the acts done, in the presence of other people with the intention of exhibiting to the other people a contempt for the flag, the State contends that the words and acts are done publicly." A careful reading of the entire charge shows no qualification of the language to which exception is taken. In fact, this portion of the charge is but a reiteration of almost identical language which the presiding justice used previously which is preceded by the following interpretative statement: . . . "To get the meaning of the term we have to, sometimes, go to the purpose of the particular statute in which the term is used, and I apprehend that the Legislature in passing this statute intended, in a broad, general way not to prevent an individual from giving vent to animosity which he has in regard to the flag, no matter how contemptuous it may be, if he does so in private. The statute does not include that at all, but the broad, general intent is to prevent him from exhibiting that contempt to other persons . . . ."

It seems to us that the charge as given ignores altogether the distinction between what is public and what is private. The rule is not whether the words are spoken or the acts are done in the presence of others in a place where persons have an opportunity to come. Such a test would bring within the statutory prohibition conduct which might take place privately and secretly without any publicity whatsoever. For all practical purposes, the word "publicly" is read out of the statute by the charge. At least the definition of it as given to the jury is not in accord with the common understanding of the term as it is used in every-day life and is unsupported by the decision in any decided case.

*Exceptions sustained.*