STREET *v.* NEW YORK.

No. 5. Argued October 21, 1968.—Decided April 21, 1969.

*David T. Goldstick* argued the cause for appellant. With him on the briefs were *Albert H. Blumenthal, Osmond K. Fraenkel, Alan H. Levine,* and *Melvin L. Wulf.*

*Harry Brodbar* argued the cause for appellee. With him on the brief was *Elliott Golden.*

Briefs of *amici curiae* urging affirmance were filed by *Louis J. Lefkowitz,* Attorney General, *pro se, Samuel A. Hirshowitz,* First Assistant Attorney General, and *Brenda Soloff,* Assistant Attorney General, for the Attorney General of New York, and by *Peter Megargee Brown* for the United States Flag Foundation, Inc.

MR. JUSTICE HARLAN delivered the opinion of the Court.

Appellant Street has been convicted in the New York courts of violating former § 1425, subd. 16, par. d, of the New York Penal Law, which makes it a misdemeanor

"publicly [to] mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act [any flag of the United States]." [1]  He was given a suspended sentence.  We must decide whether, in light of all the circumstances, that conviction denied to him rights of free expression protected by the First Amendment and assured against state infringement by the Fourteenth Amendment.  See *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 269, 271, 276–277 (1964).

According to evidence given at trial, the events which led to the conviction were these.  Appellant testified that during the afternoon of June 6, 1966, he was listening to the radio in his Brooklyn apartment.  He heard a news report that civil rights leader James Meredith had been shot by a sniper in Mississippi.  Saying to himself, "They didn't protect him," appellant, himself a Negro, took from his drawer a neatly folded, 48-star American flag which he formerly had displayed on national holidays.  Appellant left his apartment and carried the still-folded flag to the nearby intersection of St. James Place and Lafayette Avenue.  Appellant stood on the northeast corner of the intersection, lit the flag with a match, and dropped the flag on the pavement when it began to burn.

Soon thereafter, a police officer halted his patrol car and found the burning flag.  The officer testified that he then crossed to the northwest corner of the intersection, where he found appellant "talking out loud" to a small group of persons.  The officer estimated that there were some 30 persons on the corner near the flag and five to 10 on the corner with appellant.  The officer testified that as he approached within 10 or 15 feet of

---

[1] N. Y. Penal Law § 1425, subd. 16, par. d (1909).  In 1967 § 1425, subd. 16, was superseded by § 136 of the General Business Law, which in par. d defines the offense in identical language.  See N. Y. Laws 1965, c. 1031, § 52.

appellant, he heard appellant say, "We don't need no damn flag," and that when he asked appellant whether he had burned the flag appellant replied: "Yes; that is my flag; I burned it. If they let that happen to Meredith we don't need an American flag." Appellant admitted making the latter response, but he denied that he said anything else and asserted that he always had remained on the corner with the flag.

Later the same day, appellant was charged, by an information sworn to before a judge of the New York City Criminal Court, with having committed "the crime of Malicious Mischief in that [he] did wilfully and unlawfully defile, cast contempt upon and burn an American Flag, in violation of 1425–16–D of the Penal Law, under the following circumstances: . . . [he] did wilfully and unlawfully set fire to an American Flag and shout, 'If they did that to Meredith, We don't need an American Flag.' "

Appellant was tried before another Criminal Court judge, sitting without a jury, and was convicted of malicious mischief in violation of § 1425, subd. 16, par. d.[2] He was subsequently given a suspended sentence. The Appellate Term, Second Department, affirmed without opinion. Leave was granted to appeal to the New York Court of Appeals, and after plenary consideration that court unanimously affirmed. 20 N. Y. 2d 231, 229 N. E. 2d 187 (1967). We noted probable jurisdiction. 392 U. S. 923 (1968).[3]

---

[2] Appellant was simultaneously tried for disorderly conduct in connection with the same events. He was acquitted of that offense.

[3] At one stage of the proceedings in this Court, the State moved for dismissal on the ground that we lacked jurisdiction over this appeal because the case was moot. The State pointed out that appellant received a suspended sentence, and that the one-year period within which the suspended sentence might have been replaced with a prison sentence under New York law had expired. It further asserted that there were no significant collateral consequences under

Street argues that his conviction was unconstitutional for three different reasons. *First,* he claims that § 1425, subd. 16, par. d, is overbroad, both on its face and as applied, because the section makes it a crime "publicly [to] defy . . . or cast contempt upon [an American flag] *by words* . . . ." (Emphasis added.) *Second,* he contends that § 1425, subd. 16, par. d, is vague and imprecise because it does not clearly define the conduct which it forbids. *Third,* he asserts that New York may not con-

---

either New York or federal law. In response, appellant stated that his employer, the New York Transit Authority, had instituted disciplinary proceedings against him as a result of his conviction. Appellant was charged with "misconduct," and according to Transit Authority rules he may be punished by a fine of up to $100 or suspension without pay for up to two months if the still-pending charges are finally sustained. Appellant also noted that §§ 393–c, 482, and 510 of the New York Code of Criminal Procedure provide respectively that his conviction may be used to rebut any character evidence adduced by him in future criminal proceedings; that a record of his conviction must be made available to the judge prior to imposition of any future criminal sentence; and that if convicted of a felony he may now be sentenced as a "habitual criminal."

Only last Term, this Court held in *Ginsberg* v. *New York,* 390 U. S. 629, 633, n. 2 (1968), that the case of a New York appellant was not moot even though the time for revocation of his suspended sentence had expired, because it was possible that his license to operate a luncheonette might be withdrawn in consequence of his conviction. Here there is an actual rather than merely a potential threat that appellant will be deprived of his employment, albeit only temporarily. This Court also held last Term, in *Sibron* v. *New York,* 392 U. S. 40, 50–58 (1968), that the case of a New York appellant who had fully served his misdemeanor sentence was not moot because he apparently could not have brought his case to this Court before completion of his sentence and because the conviction could be used for impeachment and sentencing purposes in future criminal proceedings. Appellant Street similarly was unable, despite diligent prosecution of his appeals, to bring his case here within a year of his sentencing. He is subject to all of the collateral penalties to which Sibron was liable. Hence, both *Ginsberg* and *Sibron* dictate that this case is not moot.

stitutionally punish one who publicly destroys or damages an American flag as a means of protest, because such an act constitutes expression protected by the Fourteenth Amendment. We deem it unnecessary to consider the latter two arguments, for we hold that § 1425, subd. 16, par. d, was unconstitutionally applied in appellant's case because it permitted him to be punished merely for speaking defiant or contemptuous words about the American flag. In taking this course, we resist the pulls to decide the constitutional issues involved in this case on a broader basis than the record before us imperatively requires.

Though our conclusion is a narrow one, it requires pursuit of four lines of inquiry: (1) whether the constitutionality of the "words" part of the statute was passed upon by the New York Court of Appeals; (2) whether, if appellant's conviction may have rested in whole or in part on his utterances and if the statute as thus applied is unconstitutional, these factors in themselves require reversal; (3) whether Street's words may in fact have counted independently in his conviction; and (4) whether the "words" provision of the statute, as presented by this case, is unconstitutional.

I.

The New York Court of Appeals did not mention in its opinion the constitutionality of the "words" part of § 1425, subd. 16, par. d.[4] Hence, in order to vindicate our jurisdiction to deal with this particular issue, we must inquire whether that question was presented to the New York courts in such a manner that it was necessarily decided by the New York Court of Appeals when it affirmed

---

[4] Also, we are unable to read the opinion of the Court of Appeals as reading the "words" clause out of the statute and authoritatively construing it to reach only the *act* of flag burning, whether as a protest or otherwise.

appellant's conviction. If the question was not so presented, then we have no power to consider it. See 28 U. S. C. §§ 1257 (2), 1257 (3); *Bailey* v. *Anderson,* 326 U. S. 203, 206–207 (1945). Moreover, this Court has stated that when, as here, the highest state court has failed to pass upon a federal question, it will be assumed that the omission was due to want of proper presentation in the state courts, unless the aggrieved party in this Court can affirmatively show the contrary. See, *e. g., Bailey* v. *Anderson, supra; Chicago, I. & L. R. Co.* v. *McGuire,* 196 U. S. 128, 131–133 (1905).

In this case, any want of presentation by the appellant must have occurred at the trial level, for there appears to be no doubt that the issue of the constitutionality of the "words" part of the statute was raised in appellant's briefs in both the Appellate Term and the Court of Appeals, and the State does not suggest the contrary. In the trial court, appellant's counsel raised the constitutional issues by means of the following motion:

> "Before we plead to this case I would like to make a motion to dismiss the information upon the ground it does not state facts to constitute a crime on the following grounds: The defendant was engaged in a constitutionally protected activity, to wit, freedom of speech. The allegation simply says that the defendant did wilfully and unlawfully set fire to an American flag and did say: 'If they did that to Meredith we don't need an American flag.' Under the first amendment of the Constitution of the United States and under the New York State constitution on freedom of speech they provide for protest in many forms, whether it be by burning a flag, demonstration or picketing. This is a form of demonstration and protest."

The motion was denied. It was renewed at the end of the State's case and at the end of the trial, and on both occasions was again denied.

The issue whether a federal question was sufficiently and properly raised in the state courts is itself ultimately a federal question, as to which this Court is not bound by the decision of the state courts.[5] However, it is not entirely clear whether in such cases the scope of our review is limited to determining whether the state court has "by-passed the federal right under forms of local procedure" or whether we should decide the matter "*de novo* for ourselves." *Ellis* v. *Dixon,* 349 U. S. 458, 463 (1955). In either event, we think appellant has met the burden of showing that the issue of the constitutionality of the "words" part of § 1425, subd. 16, par. d, was adequately raised in the state trial court. The motion quoted above explicitly referred to appellant's words. Appellant's counsel termed appellant's overall activity a "demonstration" or "protest," terms which encompass words as well as conduct. Indeed, if appellant's intention was to protest alleged governmental inaction in connection with the shooting of James Meredith, his words were an essential element, for without them no one would have known the object of his protest.

To the extent that the matter is governed by New York law, we have found no New York statutes or decisions which require that an issue be raised in the trial court with greater specificity than occurred here. In fact, in *People* v. *McLucas,* 15 N. Y. 2d 167, 172, 204 N. E. 2d 846, 848 (1965), the New York Court of Appeals held that when an appellant claims "deprivation of a funda-

---

[5] See, *e. g., Parker* v. *Illinois,* 333 U. S. 571, 574 (1948); *Carter* v. *Texas,* 177 U. S. 442, 447 (1900); R. Robertson & F. Kirkham, Jurisdiction of the Supreme Court of the United States § 63, at 112 & n. 1 (R. Wolfson & P. Kurland ed. 1951), and other cases there cited.

mental constitutional right" New York appellate courts may review the correctness of a jury charge even though the appellant failed to except to the charge in the trial court. The Court of Appeals reached this result despite the fact that § 420–a of the New York Code of Criminal Procedure then required that an exception be taken "expressly" if the issue of the correctness of a jury charge was to be preserved for appellate review. In the present case, the right asserted by appellant was surely "fundamental," and under New York law a less precise objection was required than to a jury instruction.[6]

Insofar as the question of sufficient presentation is one for our independent decision, the controlling principle was set forth in the leading case of *New York ex rel. Bryant* v. *Zimmerman*, 278 U. S. 63, 67 (1928):

> "There are various ways in which the validity of a state statute may be drawn in question on the ground that it is repugnant to the Constitution of the United States. No particular form of words or phrases is essential, but only that the claim of invalidity and the ground therefor be brought to the attention of the state court with fair precision and in due time. And if the record as a whole shows either expressly or by clear intendment that this was done, the claim is to be regarded as having been adequately presented." (Footnote omitted.)

We think this requirement was satisfied by appellant's previously quoted motion in the trial court and

---

[6] At the time of appellant's trial, § 420–a of the New York Code of Criminal Procedure provided that with respect to trial rulings other than jury instructions:

"An exception shall be deemed to have been taken by the party adversely affected to every ruling either before or after the cause is finally submitted, when such party, at the time when such ruling is sought or made, makes known to the court or judge his position thereon by objection or otherwise."

his raising of the issue in the two appellate courts.[7] We therefore conclude that the question is properly before us.

## II.

We next consider whether it is our duty to reverse if we find, as we do in Parts III and IV, *infra,* that Street's words could have been an independent cause of his conviction and that a conviction for uttering such words would violate the Constitution.

That such is our duty is made apparent by a number of decisions of this Court. In the leading case of *Stromberg* v. *California,* 283 U. S. 359 (1931), the appellant was convicted by a jury under a California statute making it an offense publicly to display a red flag for any one of three purposes. Finding that it would be unconstitutional to punish one who displayed for the first-named reason, this Court rejected the state court's reasoning that the appellant's conviction could nevertheless be sustained because the other two statutory reasons were severable and constitutional. This Court said:

> "The verdict against the appellant was a general one. It did not specify the ground upon which it rested. . . . [I]t is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses . . . was invalid, it can-

---

[7] We find unpersuasive the State's argument that appellant's omission to raise the question of the constitutionality of the "words" provision is shown by his failure at any stage to invoke the exclusionary rule of *Miranda* v. *Arizona,* 384 U. S. 436 (1966), with respect to the admission of his words into evidence. For the State concedes that appellant's words were probative at least with respect to his unlawful intent in burning the flag, see Brief for Appellee 45–46, and appellant therefore would have had reason to invoke *Miranda* even had he believed the "words" part of the statute to be irrelevant.

not be determined upon this record that the appellant was not convicted under that clause. . . . It follows that . . . the conviction cannot be upheld." *Id.*, at 367–368.

The principle established in *Stromberg* has been consistently followed. In *Williams* v. *North Carolina,* 317 U. S. 287 (1942), this Court again held itself compelled to reverse a conviction based upon a general jury verdict when the record failed to prove that the conviction was not founded upon a theory which could not constitutionally support a verdict. The Court stated:

"To say that a general verdict of guilty should be upheld though we cannot know that it did not rest on the invalid constitutional ground . . . would be to countenance a procedure which would cause a serious impairment of constitutional rights." *Id.,* at 292.

The rule was again applied in *Cramer* v. *United States,* 325 U. S. 1, 36, n. 45 (1945); *Terminiello* v. *Chicago,* 337 U. S. 1, 5–6 (1949); and *Yates* v. *United States,* 354 U. S. 298, 311 (1957).

It is true that in the present case the general verdict was rendered by a judge, not a jury. However, if the ground of the judge's decision cannot be ascertained from the record, then the danger of unconstitutional conviction is not significantly less than in the cases just discussed. Cf. *Thomas* v. *Collins,* 323 U. S. 516, 528–529 (1945). Nor would it be appropriate to remand the case to the trial judge for a *post hoc* explanation of the grounds of his decision. Cf. *Greyhound Lines* v. *Mealey,* 334 U. S. 653, 655 (1948). Hence, we conclude that the case is governed by the rule of *Stromberg,* and that appellant's conviction must be set aside if we find that it could have been based solely upon his words and that a conviction resting on such a basis would be

unconstitutional—a matter to which we shall turn in a moment.

Moreover, even assuming that the record precludes the inference that appellant's conviction might have been based *solely* on his words, we are still bound to reverse if the conviction could have been based upon *both* his words and his act. This is made apparent by *Thomas* v. *Collins, supra.* The Court in that case noted that Thomas had been cited for contempt because during a meeting he allegedly had violated a court restraining order both by soliciting a single individual to join a union and by soliciting all nonunion men present. The Court found it unnecessary to consider the State's contention that the judgment could be sustained on the basis of the individual solicitation alone. The Court said:

> "The motion for the fiat in contempt was filed and the fiat itself was issued on account of both invitations. The order adjudging Thomas in contempt was in general terms, finding that he had violated the restraining order, without distinction between the solicitations set forth in the petition and proved as violations. The sentence was a single penalty. In this state of the record it must be taken that the order followed the prayer of the motion and the fiat's recital, and that the penalty was imposed on account of both invitations. The judgment therefore must be affirmed as to both or as to neither. Cf. *Williams* v. *North Carolina,* 317 U. S. 287, 292; *Stromberg* v. *California,* 283 U. S. 359, 368." 323 U. S., at 528–529. (Footnotes omitted.)

Finding that a conviction based upon the general solicitation could not stand, the Court reversed the entire conviction.[8]

---

[8] There can be no doubt that the Court's disposition in *Thomas,* including its decision to reverse the conviction and not simply to

As in *Thomas,* appellant here was charged with two acts violative of the statute: burning a flag and publicly speaking defiant or contemptuous words about the flag; and evidence was introduced to show the commission of both acts. Here too the verdict was general and the sentence a single penalty. Hence, unless the record negates the possibility that the conviction was based on both alleged violations, *Thomas* dictates that "[t]he judgment . . . must be affirmed as to both or as to neither."

We take the rationale of *Thomas* to be that when a single-count indictment or information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as "intertwined" and have rested the conviction on both together. See 323 U. S., at 528–529, 540–541. There is no comparable hazard when the indictment or information is in several counts and the conviction is explicitly declared to rest on findings of guilt on certain of those counts,[9] for in such instances there is positive evidence that the trier of fact considered each count on its own merits and separately from the others.

### III.

We turn to considering whether appellant's words could have been the sole cause of his conviction, or whether

remand for resentencing, was carefully considered. The case was originally argued during the 1943 Term but was ordered to be restored to the docket and reargued the following Term, with the parties directed to brief, *inter alia,* the question whether the general solicitation was a basis of Thomas' conviction.

[9] See, *e. g., Claassen* v. *United States,* 142 U. S. 140 (1891); *Pinkerton* v. *United States,* 328 U. S. 640 (1946); *Barenblatt* v. *United States,* 360 U. S. 109 (1959).

the conviction could have been based on both his words and his burning of the flag. As *Stromberg* teaches, we cannot take the opinion of the New York Court of Appeals as obviating our duty to examine the record for ourselves in order to ascertain whether the conviction may have rested upon such grounds. The sworn information which charged appellant with the crime of malicious mischief, and which is quoted more fully *supra,* at 579, recited not only that appellant had burned an American flag but also that he "[did] shout, 'If they did that to Meredith, We don't need an American Flag.'" Section 1425, subd. 16, par. d, the statute which appellant was charged with violating, made it a crime not only publicly to mutilate a flag but also "publicly [to] defy . . . or cast contempt upon [any American flag] by words."

The State argues that appellant's words were at most used to establish his unlawful intent in burning the flag.[10] However, after a careful examination of the comparatively brief trial record, we find ourselves unable to say with certainty that appellant's words were not an independent cause of his conviction. While it is true that at trial greater emphasis was placed upon appellant's

---

[10] The State also contends that appellant's words could not have been a ground of conviction because they obviously were not spoken "publicly," as required by § 1425, subd. 16, par. d. However, although appellant testified that he spoke solely to a police officer, the officer himself gave evidence from which the trial judge might have concluded that appellant's remarks were made either to or within hearing of a small crowd. See *supra,* at 578–579. Moreover, the sworn information recited that appellant "shout[ed]" his words on a city street, thereby apparently satisfying the statutory requirement that the words be said "publicly."

Nor do we think it impossible for the trial judge to have found that by his statements, "We don't need no damn flag" and "If they let that happen to Meredith we don't need an American flag," appellant "def[ied] . . . or cast contempt upon [an American flag] by words" in violation of § 1425, subd. 16, par. d.

action in burning the flag than upon his words, a police officer did testify to the utterance of the words. The State never announced that it was relying exclusively upon the burning. The trial judge never indicated during the trial that he regarded appellant's words as relating solely to intent. The judge found appellant guilty immediately after the end of the trial, and he delivered no oral or written opinion.

In the face of an information explicitly setting forth appellant's words as an element of his alleged crime, and of appellant's subsequent conviction under a statute making it an offense to speak words of that sort, we find this record insufficient to eliminate the possibility either that appellant's words were the sole basis of his conviction or that appellant was convicted for both his words and his deed.

### IV.

We come finally to the question whether, in the circumstances of this case, New York may constitutionally inflict criminal punishment upon one who ventures "publicly [to] defy . . . or cast contempt upon [any American flag] by words . . . ."

The relevant evidence introduced at appellant's trial, considered in the light most favorable to the State, must be taken to establish the following. At the time of his arrest, appellant was standing on a street corner and speaking to a small crowd; on the opposite corner lay the burning flag. Appellant said to the crowd: "We don't need no damn flag"; and when questioned by a police officer appellant stated: "If they let that happen to Meredith we don't need an American flag." According to the officer, the crowds which gathered around appellant and around the flag did not obstruct the street or sidewalk and were neither unruly nor threatening.

In these circumstances, we can think of four governmental interests which might conceivably have been

furthered by punishing appellant for his words: (1) an interest in deterring appellant from vocally inciting others to commit unlawful acts; (2) an interest in preventing appellant from uttering words so inflammatory that they would provoke others to retaliate physically against him, thereby causing a breach of the peace; (3) an interest in protecting the sensibilities of passers-by who might be shocked by appellant's words about the American flag; and (4) an interest in assuring that appellant, regardless of the impact of his words upon others, showed proper respect for our national emblem.

In the circumstances of this case, we do not believe that any of these interests may constitutionally justify appellant's conviction under § 1425, subd. 16, par. d, for speaking as he did. We begin with the interest in preventing incitement. Appellant's words, taken alone, did not urge anyone to do anything unlawful. They amounted only to somewhat excited public advocacy of the idea that the United States should abandon, at least temporarily, one of its national symbols. It is clear that the Fourteenth Amendment prohibits the States from imposing criminal punishment for public advocacy of peaceful change in our institutions. See, *e. g., Cox* v. *Louisiana (I)*, 379 U. S. 536, 546–552 (1965); *Edwards* v. *South Carolina*, 372 U. S. 229, 237–238 (1963); *Terminiello* v. *Chicago*, 337 U. S. 1, 4–5 (1949); cf. *Yates* v. *United States*, 354 U. S. 298, 318–319 (1957). Even assuming that appellant's words might be found incitive when considered together with his simultaneous burning of the flag, § 1425, subd. 16, par. d, does not purport to punish only those defiant or contemptuous words which amount to incitement, and there is no evidence that the state courts regarded the statute as so limited. Hence, a conviction for words could not be upheld on this basis. See, *e. g., Yates* v. *United States, supra; Terminiello* v. *Chicago, supra*.

Nor could such a conviction be justified on the second ground mentioned above: the possible tendency of appellant's words to provoke violent retaliation. Though it is conceivable that some listeners might have been moved to retaliate upon hearing appellant's disrespectful words, we cannot say that appellant's remarks were so inherently inflammatory as to come within that small class of "fighting words" which are "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, 574 (1942). And even if appellant's words might be found within that category, § 1425, subd. 16, par. d, is not narrowly drawn to punish only words of that character, and there is no indication that it was so interpreted by the state courts. Hence, this case is again distinguishable from *Chaplinsky, supra,* in which the Court emphasized that the statute was "carefully drawn so as not unduly to impair liberty of expression . . . ." *Id.,* at 574. See also *Terminiello* v. *Chicago, supra.*

Again, such a conviction could not be sustained on the ground that appellant's words were likely to shock passers-by. Except perhaps for appellant's incidental use of the word "damn," upon which no emphasis was placed at trial,[11] any shock effect of appellant's speech must be attributed to the content of the ideas expressed. It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers. See, *e. g., Cox* v. *Louisiana (I), supra; Edwards* v. *South Carolina, supra; Terminiello* v. *Chicago, supra;* cf. *Cantwell* v. *Connecticut,* 310 U. S. 296 (1940). And even if such a conviction might be upheld on the ground of "shock," there is again no indication that the state courts regarded the statute as limited to that purpose.

---

[11] The State admits that there was only a "single and casual reference to this statement at the trial . . . ." Brief for Appellee 45.

Finally, such a conviction could not be supported on the theory that by making the above-quoted remarks about the flag appellant failed to show the respect for our national symbol which may properly be demanded of every citizen. In *Board of Educ.* v. *Barnette,* 319 U. S. 624 (1943), this Court held that to require unwilling schoolchildren to salute the flag would violate rights of free expression assured by the Fourteenth Amendment. In his opinion for the Court, Mr. Justice Jackson wrote words which are especially apposite here:

> "The case is made difficult not because the principles of its decision are obscure but because the flag involved is our own. Nevertheless, we apply the limitations of the Constitution with no fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization. . . . [F]reedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.
>
> "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us." *Id.,* at 641–642. (Footnote omitted.)

We have no doubt that the constitutionally guaranteed "freedom to be intellectually . . . diverse or even contrary," and the "right to differ as to things that touch the heart of the existing order," encompass the freedom to express publicly one's opinions about our flag, including those opinions which are defiant or contemptuous.

Since appellant could not constitutionally be punished under § 1425, subd. 16, par. d, for his speech, and since we have found that he may have been so punished, his conviction cannot be permitted to stand. In so holding, we reiterate that we have no occasion to pass upon the validity of this conviction insofar as it was sustained by the state courts on the basis that Street could be punished for his burning of the flag, even though the burning was an act of protest. Nor do we perceive any basis for our Brother WHITE's fears that our decision today may be taken to require reversal whenever a defendant is convicted for burning a flag in protest, following a trial at which his words have been introduced to prove some element of that offense. Assuming that such a conviction would otherwise pass constitutional muster, a matter about which we express no view, nothing in this opinion would render the conviction impermissible merely because an element of the crime was proved by the defendant's words rather than in some other way. See *United States* v. *O'Brien*, 391 U. S. 367, 369–370, 376–377 (1968).

We add that disrespect for our flag is to be deplored no less in these vexed times than in calmer periods of our history. Cf. *Halter* v. *Nebraska*, 205 U. S. 34 (1907). Nevertheless, we are unable to sustain a conviction that may have rested on a form of expression, however distasteful, which the Constitution tolerates and protects.

For the reasons previously set forth, we reverse the judgment of the New York Court of Appeals and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. CHIEF JUSTICE WARREN, dissenting.

I dissent from the reversal of this judgment, not only because the Court in my opinion has strained to bring this trial within *Stromberg* v. *California*, 283 U. S. 359

(1931), but more particularly because it has declined to meet and resolve the basic question presented in the case. That question has been variously stated by the New York Court of Appeals and the parties. The court below employed the following statement of the question:

> "We are called upon to decide whether the deliberate act of burning an American flag in public as a 'protest' may be punished as a crime." [1]

Appellant tells us that the issue presented is:

> "May New York State constitutionally impose penal sanctions upon an individual charged with destroying or damaging an American flag in an attempt to dramatize his concern with social conditions existing in the country?" [2]

New York's statement of the issue is identical:

> "May the State of New York constitutionally impose penal sanctions upon one who is charged with publicly and deliberately desecrating an American flag as a means of dramatizing his dissatisfaction with social conditions existing within our Country?" [3]

Any distinctions between the above questions are without a significant difference. The parties obviously believe that the constitutionality of flag-desecration statutes is before the Court. The question posed by the Court of Appeals is the most succinct. Chief Judge Fuld, writing for a unanimous Court of Appeals, answered the question squarely; we should do likewise if we are to meet our responsibility. But the Court specifically refuses to decide this issue. Instead, it searches microscopically for the opportunity to decide the case on the

---

[1] *People* v. *Street*, 20 N. Y. 2d 231, 234, 229 N. E. 2d 187, 189 (1967).

[2] Brief for Appellant 2. Appellant also suggests that the New York statute is unconstitutionally vague. The Court does not deal with this issue, nor do I.

[3] Brief for Appellee 5.

peripheral *Stromberg* ground, holding that it is impossible to determine the basis for appellant's conviction. In my opinion a reading of the short trial record leaves no doubt that appellant was convicted solely for burning the American flag.

I.

From the beginning to the end of the proceedings below the parties placed only two matters in issue: (1) is burning the flag protected symbolic speech and (2) did appellant burn the flag for the purpose of casting contempt upon it or did he burn it in a dignified manner?[4] The information alleged that "Sidney Street did commit the crime of Malicious Mischief in that the defendant did wilfully and unlawfully defile, cast contempt upon and burn an American Flag, in violation of 1425–16–D of the Penal Law, under the following circumstances: On the aforesaid date, place and time, the defendant did wilfully and unlawfully set fire to an American Flag and shout, 'If they did that to Meredith, We don't need an American Flag.' " Although the Court stresses the mention of appellant's words in the information as indicative that he was convicted for uttering these words, the trial proceedings demonstrate that the words were employed only to show appellant's purpose in burning the flag.

At the outset of the trial appellant's counsel moved to dismiss the information, clearly revealing the theory of appellant's defense that flag burning is constitutionally protected and that appellant burned the flag in a dignified manner.

> "Mr. Goldstick [appellant's counsel]: Before we plead to this case I would like to make a motion to dismiss the information upon the ground it does not

---

[4] The Appendix to this opinion reproduces in full those portions of the trial record which have any conceivable bearing upon the basis for the verdict.

state facts to constitute a crime on the following grounds: The defendant was engaged in a constitutionally protected activity, to wit, freedom of speech. The allegation simply says that the defendant did wilfully and unlawfully set fire to an American flag and did say: 'If they did that to Meredith we don't need an American flag.' Under the first amendment of the Constitution of the United States and under the New York State constitution on freedom of speech they provide for protest in many forms, whether it be by *burning a flag,* demonstration or picketing. This is a form of demonstration and protest.

"Court: You say *burning the flag* is a form of demonstration?

"Mr. Goldstick: Yes.

"Court: Motion denied.

"Mr. Goldstick: Also, there is a Federal statute which provides for *burning the flag.* I refer Your Honor—

"Court, interposing: So does Section 1425 provide for the lawful disposition of a flag!

"Mr. Goldstick, continuing: I refer Your Honor to page 6 of my brief, referring to the United States Code that a flag, when it is in such a condition that it is no longer a fitting emblem for display, should be destroyed in a dignified way, preferably by *burning.*

"Now, under the supremacy clause, if there is any conflict with any statute the Federal statute takes precedence; if a State law is in conflict with a Federal law the Federal law takes precedence. The Federal law provides you may *burn* an American flag; therefore, New York State is without power to make a complaint and convict a man for the *burning* of an American flag.

"Court: Motions denied. The question here would be whether he *burned* it because it was in such poor condition that it should be *burned,* or if it was an illegal demonstration." (Emphasis added.)

Defense counsel insisted that burning the flag, an act he equated with a demonstration or picketing, was a form of speech for which his client could not be constitutionally punished. His colloquy with the trial judge does not give even the slightest suggestion that appellant was being prosecuted for words he might have spoken. That defense counsel believed that appellant's act, not his words, was at issue is further demonstrated by counsel's pre-emption argument. The federal statute to which counsel referred, 56 Stat. 377, c. 435, 36 U. S. C. § 173 *et seq.,* concerns the manner in which the flag is to be displayed and in § 4 (j), 56 Stat. 380, 36 U. S. C. § 176 (j), mandates that the flag, when no longer a fitting emblem for display, should be destroyed in a dignified way, preferably by burning. At the time of appellant's trial the federal prohibition of flag desecration, which in all material particulars was identical to New York's, applied only to the District of Columbia and could therefore not have pre-empted state legislation on the same subject.[5]

The trial testimony confirms my belief that appellant's act was the sole basis for the verdict as it contains nothing to suggest that either the parties or the trial judge believed that appellant was on trial for his words. The arresting officer testified that, as he was investigating the source of a fire, he heard appellant say, "We don't need no damn flag." The officer then asked appellant

---

[5] See 4 U. S. C. § 3. Federal legislation enacting flag-desecration prohibitions on a national scale was not passed until July 5, 1968, two years after appellant's trial. This legislation specifically does not pre-empt state flag-burning statutes. See 82 Stat. 291, 18 U. S. C. § 700 (c) (1964 ed., Supp. IV).

whether he was responsible for the burning of the flag; appellant replied that he was and that: "If they let that happen to Meredith we don't need an American flag." The officer's testimony concluded with a description of the number of people in the vicinity and the extinguishing of the fire. During cross-examination of the officer, defense counsel asked not one question concerning what, if anything, appellant said.

Appellant did not dispute the prosecution's version of the facts. He testified that, hearing the news report of Meredith's shooting, he removed a flag from his dresser drawer, walked to the corner of St. James Place and Lafayette Avenue and burned the flag. According to appellant, he made no remarks to the crowd that had gathered and his reference to Meredith was made to the police officer. Cross-examination by the prosecution explored appellant's motivation for burning the flag; no mention was made of words appellant might have spoken.

We are told by the Court that at least in part appellant's conviction rests on his words. If it does, the trial record is strangely silent, for the State made no attempt to prove that appellant's words were heard by the crowd. Appellant insisted that he spoke only to the officer, yet the New York statute requires that the accused's flag desecration be public. The State argues, without contradiction by appellant, that words spoken to a policeman would not be spoken publicly for purposes of the statute.[6] I think it evident that appellant's words were mentioned in the indictment and introduced at trial only to show that he burned the flag with an intent to desecrate it, a necessary element of the State's case. In the absence of such evidence, the State would have proved

---

[6] It appears that the New York courts would so construe their legislation. See *People* v. *La Sister*, 9 Misc. 2d 518, 170 N. Y. S. 2d 702 (Ct. Spec. Sess. 1958); cf. *State* v. *Peacock*, 138 Me. 339, 25 A. 2d 491 (1942).

that appellant burned a flag but would have left open the possibility that the burning was designed to destroy it in a dignified manner. The fact that appellant's words supplied an element of the State's case does not mean that he was convicted for uttering these words. See *Giboney* v. *Empire Storage & Ice Co.*, 336 U. S. 490, 498 (1949).

Neither the prosecution nor the defense nor the New York courts attached any independent significance to his words. To interpret this record in any other manner ignores the very basic fact that the trial judge and the parties thought that there was one issue in this trial— whether appellant could be criminally punished for burning the flag. This record is not sufficiently ambiguous to justify the Court's speculation that the verdict below might rest even in part upon a conviction for appellant's words.

## II.

I do not believe that the *Stromberg* line of cases allows us to avoid deciding whether flag burning is protected by the First Amendment. This case does not fit the *Stromberg* mold.

Miss Stromberg was one of the supervisors of a children's summer camp. She directed a daily ceremony during which the children raised the Soviet flag and recited a pledge of allegiance "to the worker's red flag." A California statute made it a criminal offense for any person to display a red flag (1) as a symbol of opposition to organized government or (2) as an invitation to anarchistic action or (3) as an aid to propaganda of a seditious character. The trial judge, following the express terms of the statute, charged that Miss Stromberg could be convicted if she displayed a red flag for any one of the three prohibited purposes. The Court first determined that a criminal conviction for display of a red flag as a symbol of opposition to organized govern-

ment would impinge upon First Amendment freedoms. Since the jury charge was disjunctive, *i. e.,* Miss Stromberg could be convicted if the jury found that she conducted the ceremony for any of the three statutorily prohibited goals, it was possible that her conviction rested totally upon an act entitled to constitutional protection. Presumably, given the jury's general verdict, it could have convicted Miss Stromberg for raising a red flag solely as a symbol of opposition to organized government but not as either an invitation to anarchistic action or an aid to propaganda of a seditious character.

The teaching of *Stromberg* is that, if there is any possibility the general verdict below rests on speech or conduct entitled to constitutional protection, then the conviction must be reversed. The *Stromberg* analysis cannot be applied to appellant's conviction as the factual patterns in the two cases are distinct. The record leaves no doubt that appellant did burn the flag. Nor can appellant argue that his act was not an act of desecration. The trial judge emphatically stated that the issue was whether appellant burned the flag to destroy it in a dignified manner or to cast contempt upon it. Appellant's conviction therefore must be based upon a finding that he desecrated the flag by burning and neither he nor the Court suggests otherwise. We are not confronted with a jury trial and the consequent inability to determine the basis for the verdict below. The trial judge at the very outset of the trial made known his view that appellant's motivation for burning the flag was the probative issue. Combining this act of burning with a verbalization of the reasons for it does not allow the Court to avoid determining the constitutionality of appellant's conduct. Since there can be no claim that appellant was convicted for his speech, *Stromberg* simply does not apply.

My analysis is confirmed by an examination of the other cases upon which the Court relies. *Williams* v.

*North Carolina,* 317 U. S. 287 (1942), presents a factual pattern identical to *Stromberg.* Williams, a resident of North Carolina, obtained a Nevada divorce and then remarried in Nevada. Upon his return to North Carolina, Williams was convicted of bigamous cohabitation. The jury was charged that it could convict Williams if it found either that he procured the divorce based upon substituted service or that he went to Nevada not to establish a bona fide residence but rather to obtain a divorce through a fraud upon the Nevada courts. Holding that the Full Faith and Credit Clause required North Carolina to respect Williams' Nevada divorce even though acquired by substituted service, the Court reversed Williams' conviction since it was possible that the jury found the divorce was not procured by fraud yet convicted Williams. Under this state of facts, the conviction could have been based upon the acquisition of a divorce North Carolina was constitutionally compelled to honor.

*Terminiello* v. *Chicago,* 337 U. S. 1 (1949), reflects the same approach. Terminiello was charged with disorderly conduct. The jury was allowed to convict if it found that Terminiello's speech either stirred the public to anger or constituted "fighting words." Since only the latter may be constitutionally prohibited, the Court reversed. It was possible that the jury found that Terminiello's speech merely stirred the public to anger yet convicted him. Terminiello could have been convicted for constitutionally protected conduct; he was therefore entitled to a reversal. *Yates* v. *United States,* 354 U. S. 298 (1957), also conforms to this pattern. Charged with a violation of the Smith Act, Yates was convicted under instructions which made either "advocacy" or "organizing" a statutory violation. The Court decided that the jury instruction with regard to the organizing charge was erroneous; since the jury could have convicted Yates

for organizing even if it found that he was not guilty of advocacy, the conviction was reversed.

The Court does not, however, base its reversal only upon a misapplication of *Stromberg*. Relying also on *Thomas* v. *Collins,* 323 U. S. 516 (1945), the Court holds that even if "the record precludes the inference that appellant's conviction might have been based *solely* on his words, we are still bound to reverse if the conviction could have been based upon *both* his words and his act." *Ante,* at 587. My reading of *Thomas* v. *Collins* indicates, however, that *Thomas* does not serve as justification for the Court's disposition of this case.[7] In *Thomas* a union organizer was held in contempt, fined, and imprisoned for disobeying a state court order enjoining him from violating a Texas statute. The statute required that labor organizers register with and procure an organizer's card from a designated Texas official before soliciting memberships in labor unions. Without either registering or procuring a card, the organizer made a speech before a group of workers. He extolled the virtues of union membership in general terms and also asked a specific individual to become a union member. As I read the case, *Thomas* holds that both the general solicitation and the solicitation of a named individual were within the protection of the First Amendment:

> "The occasion was clearly protected. The speech was an essential part of the occasion, unless all meaning and purpose were to be taken from it. And the invitations, both general and particular, were parts of the speech, inseparable incidents of

---

[7] I need not consider to what extent the *Thomas* Court's implicit assumption that Thomas could test the constitutionality of the restraining order without first attempting to secure judicial relief is inconsistent with *Walker* v. *City of Birmingham,* 388 U. S. 307 (1967); see *id.,* at 336 (DOUGLAS, J., dissenting).

the occasion and of all that was said or done. . . . How one might 'laud unionism,' as the State and the State Supreme Court concede Thomas was free to do, yet in these circumstances not imply an invitation, is hard to conceive. This is the nub of the case, which the State fails to meet because it cannot do so." *Id.*, at 534–535.

Having so held, it was unnecessary for the Court to determine if an individual solicitation could have been enjoined. The union organizer therefore was entitled to relief without regard to whether his conviction was based upon the general or the individual solicitation.

I reiterate my belief that appellant was convicted for his act not his words. *Stromberg* and the cases based upon it do not allow us the luxury of refusing to treat appellant's claim that the burning of the flag as a protest is worthy of constitutional protection.

### III.

I am in complete agreement with the general rule that this Court should not treat broad constitutional questions when narrow ones will suffice to dispose of the litigation. However, where only the broad question is presented, it is our task and our responsibility to confront that question squarely and resolve it. In a time when the American flag has increasingly become an integral part of public protests, the constitutionality of the flag-desecration statutes enacted by all of the States[8] and Congress[9] is a matter of the most widespread concern. Both those who seek constitutional shelter for acts of flag desecration perpetrated in the course of a political

---

[8] Desecration of the Flag, Hearings on H. R. 271 before Subcommittee No. 4 of the House Committee on the Judiciary, 90th Cong., 1st Sess., ser. 4, 324–346 (1967).

[9] 82 Stat. 291, 18 U. S. C. § 700 (1964 ed., Supp. IV).

protest and those who must enforce the law are entitled to know the scope of constitutional protection. The Court's explicit reservation of the constitutionality of flag-burning prohibitions encourages others to test in the streets the power of our States and National Government to impose criminal sanctions upon those who would desecrate the flag.

I believe that the States and the Federal Government do have the power to protect the flag from acts of desecration and disgrace. But because the Court has not met the issue, it would serve no purpose to delineate my reasons for this view. However, it is difficult for me to imagine that, had the Court faced this issue, it would have concluded otherwise. Since I am satisfied that the constitutionality of appellant's conduct should be resolved in this case and am convinced that this conduct can be criminally punished, I dissent.

## APPENDIX TO OPINION OF WARREN, C. J., DISSENTING.

"Mr. Goldstick [appellant's counsel]: Before we plead to this case I would like to make a motion to dismiss the information upon the ground it does not state facts to constitute a crime on the following grounds: The defendant was engaged in a constitutionally protected activity, to wit, freedom of speech. The allegation simply says that the defendant did wilfully and unlawfully set fire to an American flag and did say: 'If they did that to Meredith we don't need an American flag.' Under the first amendment of the Constitution of the United States and under the New York State constitution on freedom of speech they provide for protest in many forms, whether it be by burning a flag, demonstration or picketing. This is a form of demonstration and protest.

"Court: You say burning the flag is a form of demonstration?

"Mr. Goldstick: Yes.

"Court: Motion denied.

"Mr. Goldstick: Also, there is a Federal statute which provides for burning the flag. I refer Your Honor—

"Court, interposing: So does Section 1425 provide for the lawful disposition of a flag!

"Mr. Goldstick, continuing: I refer Your Honor to page 6 of my brief, referring to the United States Code that a flag, when it is in such a condition that it is no longer a fitting emblem for display, should be destroyed in a dignified way, preferably by burning.

"Now, under the supremacy clause, if there is any conflict with any statute the Federal statute takes precedence; if a State law is in conflict with a Federal law the Federal law takes precedence. The Federal law provides you may burn an American flag; therefore, New York State is without power to make a complaint and convict a man for the burning of an American flag.

"Court: Motions denied. The question here would be whether he burned it because it was in such poor condition that it should be burned, or if it was an illegal demonstration.

"Mr. Goldstick: Under the supremacy—

"Court, interposing: Next motion!

"No more argument, please!

"Mr. Goldstick: I plead the defendant not guilty and take exception to Your Honor's rulings.

"Court: Proceed! You may sit down, counselor! Now, we have two cases! One is Disorderly Conduct and one is Malicious Mischief.

"Mr. Goldstick: I see nothing in the information regarding a charge of Disorderly Conduct.

"Court: We have two charges before me!

"Show the complaints to counsel!

"Mr. Bonomo [the prosecutor]: We have two separate complaints! (Handing papers to Mr. Goldstick.)

"Mr. Goldstick: I plead not guilty to the Disorderly Conduct charge, too, Your Honor.

"Court: Are you ready for trial in each case?

"Mr. Goldstick: Yes.

"Court: Do you stipulate that the two cases will be tried together and the facts adduced in one will be applied to the other wherever necessary, and there will be separate findings on the facts and the law and separate judgments may be rendered?

"Mr. Goldstick: I so stipulate.

"Court: Let us proceed!

"Mr. Bonomo: I will call Patrolman James Copeland!"

[Officer Copeland testified on direct examination concerning the investigation of the source of a fire and his subsequent discovery that appellant had burned a flag.]

.    .    .    .    .

"Mr. Bonomo: That's all!

"Mr. Goldstick: Before I cross-examine I move to dismiss both charges upon the ground the People failed to make out a prima facie case.

"Court: Are you going to cross-examine?

"Mr. Goldstick: Yes, but I am making a motion before cross-examination!

"Court: You better cross-examine!"

[The cross-examination of Officer Copeland explored the size of the crowd that had gathered; no mention was made of appellant's words.]

.    .    .    .    .

"Mr. Goldstick: No further questions.

"Mr. Bonomo: People's case, in each case!

"Mr. Goldstick: I renew my motions to dismiss

upon the ground the People failed to prove a prima facie case.

"Court: Motion denied as to each case.

"Mr. Goldstick: Exception. The defendant will take the stand!"

[Appellant then gave his version of the incident. Reproduced below is his testimony concerning the words spoken.]

.     .     .     .     .

"Q. Did the officer speak to you or did you speak to him?   A. He spoke to me.

"Q. What did he say?   A. He asked me if I set fire to the flag.   I said yes.

"Q. Then what happened?   A. I said: 'If they do what they had [sic] to Meredith we don't need this flag.'

"Q. While you were burning this flag did anybody say anything to you other than this police officer? A. Nobody.

"Q. Did anybody stop?   A. I noticed no unusual crowd.

"Q. Where is that corner?   A. St. James and Lafayette.

"Q. Were you on the curb or in the street?   A. I was on the curb.   The flag was laying on the curb.

"Q. When the police officer came up to you were you still by the flag?   A. Yes.

"Q. The flag was still burning when the officer came?   A. Yes.

"Q. Other than saying to the police officer 'if they did that to Meredith we don't need an American flag,' did you speak to anybody else at the time?   A. No.

"Mr. Goldstick: No further questions!"

[Cross-examination of appellant contains no reference to any of his words.]

.     .     .     .     .

"Mr. Bonomo: That's all!

"Mr. Goldstick: The defendant rests.

"Mr. Bonomo: The People rest.

"Mr. Goldstick: I move to dismiss on all the constitutional grounds previously made, on all the grounds provided for in the Code of Criminal Procedure, and also upon the ground the People failed to prove a case beyond a reasonable doubt.

"Court: On the charge of Disorderly Conduct the defendant is acquitted; on the charge of Malicious Mischief the defendant is convicted.

"Mr. Goldstick: May we have next Tuesday for sentence?

"Court: No, that is not enough time! August 9th for sentence; bail continued."

MR. JUSTICE BLACK, dissenting.

I agree with the excellent opinion written by Chief Judge Fuld for a unanimous Court of Appeals, upholding the New York statute which this Court now holds unconstitutional as applied. The entire state court construed the statute as applied to this appellant as making it an offense publicly to burn an American flag in order to protest something that had occurred. In other words the offense which that court sustained was the burning of the flag and not the making of any statements about it. The Court seems to console itself for holding this New York flag-burning law unconstitutional as applied by saying that, as it reads the record, the conviction could have been based on the words spoken by the appellant as he was burning the flag. Those words indicated a desire on appellant's part to degrade and defame the flag. If I could agree with the Court's interpretation of the record as to the possibility of the conviction's resting on these spoken words, I would firmly and automatically agree that the law is unconstitutional. I would not

feel constrained, as the Court seems to be, to search my imagination to see if I could think of interests the State may have in suppressing this freedom of speech. I would not balance away the First Amendment mandate that speech not be abridged in any fashion whatsoever. But I accept the unanimous opinion of the New York Court of Appeals that the conviction does not and could not have rested merely on the spoken words but that it rested entirely on the fact that the defendant had publicly burned the American flag—against the law of the State of New York.

It passes my belief that anything in the Federal Constitution bars a State from making the deliberate burning of the American flag an offense. It is immaterial to me that words are spoken in connection with the burning. It is the *burning* of the flag that the State has set its face against. "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney* v. *Empire Storage & Ice Co.*, 336 U. S. 490, 498 (1949). In my view this quotation from the *Giboney* case precisely applies here. The talking that was done took place "as an integral part of conduct in violation of a valid criminal statute" against burning the American flag in public. I would therefore affirm this conviction.

MR. JUSTICE WHITE, dissenting.

The Court has spun an intricate, technical web but I fear it has ensnared itself in its own remorseless logic and arrived at a result having no support in the facts of the case or the governing law.

The Court's schema is this: the statute forbids insults to the flag either by act or words; the charge alleged both flag burning and speech; the court rendered a gen-

eral judgment; since the conviction might logically have been for speech alone or for both words and deeds and since in either event the conviction is invalid, the judgment of the New York courts must be set aside without passing upon the validity of a conviction for burning the flag.[1] I reach precisely the opposite conclusion; before Street's conviction can be either reversed or affirmed, the Court *must* reach and decide the validity of a conviction for flag burning.

I reject first the Court's suggestion that we must assume from the trial court's judgment—which was that "on the charge of Malicious Mischief the defendant is convicted"—that Street might have been convicted for speech alone. True, the complaint referred to both burning and speaking and the statute permits conviction for either insulting words or physical desecration. But surely the Court has its tongue in its cheek when it infers from this record the possibility that Street was not convicted for burning the flag but only for the words he uttered. It is a distortion of the record to read it in this manner, as THE CHIEF JUSTICE convincingly demonstrates. But even if it were fair to infer that he was convicted for speaking as well as burning, it is sheer fancy to conclude that the trial court convicted him for speech alone and acquitted him of flag burning. The appellant does not seriously argue such a claim; his major point is that he *was* convicted for burning as a protest and that such a conviction cannot stand. The Court of Appeals of New York characterized the issue before it as whether the defendant could be validly convicted for burning the flag as a protest. Moreover, without clear indication

---

[1] The Court's theory is not that of unconstitutional overbreadth; it does not argue that New York may not convict for burning because the entire statute is unconstitutional for permitting convictions for insulting speech as well as for the act of flag burning.

from the state courts, I would not assume that the particular words which Street spoke in this case would be deemed within the coverage of the statute. In any event, if Street was convicted for speaking, he most certainly was also convicted for flag burning. Hence, *Stromberg* v. *California,* 283 U. S. 359 (1931), and like cases to which I adhere, have no application by their own terms.

I reject also the proposition that if Street was convicted for both burning and talking, his conviction must be reversed if the speech conviction is unconstitutional. The Court initially cites *Thomas* v. *Collins,* 323 U. S. 516 (1945), for the rule that where two acts violative of a statute are charged, a verdict of guilty on both acts and a single sentence must be reversed if conviction for either act is invalid. This has never been the prevailing rule in this country or in this Court, either before or after *Thomas* v. *Collins.* The Court in that case cited no authority for the proposition other than *Stromberg* and *Williams* v. *North Carolina,* 317 U. S. 287 (1942), neither of which announced that rule. I am not convinced that the rule stated by the *Thomas* Court was necessary for reversal, but whether dictum or not the rule on which the Court relies today is at odds with many cases in this Court.

*Claassen* v. *United States,* 142 U. S. 140, 146–147 (1891), speaks for the law at that time:

"And it is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only. *Locke* v. *United States,* 7 Cranch 339, 344; *Clifton* v. *United States,* 4 How.

242, 250; *Snyder* v. *United States,* 112 U. S. 216; *Bond* v. *Dustin,* 112 U. S. 604, 609; 1 Bishop Crim. Pro. § 1015; Wharton Crim. Pl. & Pract. § 771."

Many years later, in *Barenblatt* v. *United States,* 360 U. S. 109 (1959), the Court was equally clear. There the defendant was indicted in five counts for contempt in refusing to answer questions put by a congressional committee. The case was tried to a court without a jury and upon conviction under all counts a general sentence of six months' imprisonment and a fine of $200 was imposed. Because the conviction on at least some of the counts was warranted, the judgment was affirmed. Relying on *Claassen* among other cases, the Court said:

"Since this sentence was less than the maximum punishment authorized by the statute for conviction under any one Count, the judgment below must be upheld if the conviction upon any of the Counts is sustainable." 360 U. S., at 115. (Footnote omitted.)

There are a host of other cases to the same effect.[2]

---

[2] *E. g., Pinkerton* v. *United States,* 328 U. S. 640, 641–642, n. 1 (1946); *Whitfield* v. *Ohio,* 297 U. S. 431, 438 (1936); *Sinclair* v. *United States,* 279 U. S. 263, 299 (1929); *Abrams* v. *United States,* 250 U. S. 616, 619 (1919); *Ballew* v. *United States,* 160 U. S. 187, 197–203 (1895); *Goode* v. *United States,* 159 U. S. 663, 669 (1895); *Evans* v. *United States,* 153 U. S. 584, 595 (1894); *Evans* v. *United States,* 153 U. S. 608 (1894). This Court has recognized the applicability of the same rule to court-martial proceedings, *Carter* v. *McClaughry,* 183 U. S. 365, 384–387 (1902); to forfeiture actions, *Snyder* v. *United States,* 112 U. S. 216, 217 (1884), *Clifton* v. *United States,* 4 How. 242, 250 (1846), *Locke* v. *United States,* 7 Cranch 339, 344 (1813); and to civil cases under state law, *Bond* v. *Dustin,* 112 U. S. 604, 609 (1884). In *United States* v. *Gainey,* 380 U. S. 63, 65 (1965), the Court applied the related concurrent sentence rule to a general sentence on a guilty verdict on an indictment charging several counts. See Transcript of Record 48–50, No. 13, October Term, 1964.

Even accepting the notion that where there is a conviction on each of several counts and a general sentence is imposed, affirmance requires upholding the conviction on each and every count, the rule would have no application to the facts of this case. Such a rule would be based on the notion that the trial judge might have given a lesser sentence if he had known that some of the counts were infirm. Reversal of the judgment on less than all the counts would call only for resentencing, not for reversal of the convictions on the other counts.

Viewed in this light, the judgment of the New York courts, insofar as it convicted Street for flag burning, cannot be reversed simply because Street was also convicted for speaking and a general sentence was given. Neither can the case be remanded for resentencing since no sentence was imposed. Sentence was suspended under the then applicable New York law and the time for imposing a sentence had expired even before the judgment was reviewed in the New York Court of Appeals.

Recognizing the aberrance of *Thomas,* the Court now gives that case a new and more confusing gloss. The general finding of guilt for both speaking at a meeting and for an individual solicitation was reversed, we are told, because the speech and solicitation were intertwined, making it uncertain that there was or would have been a judgment of guilty on the solicitation alone. Aside from the fact that *Thomas* itself said the penalty was imposed for *both violations,* the rationale which the Court extracts from the facts and judgment in that case hardly qualifies as a constitutional standard to be applied willy-nilly in all cases where there is a general verdict on a count charging dual violations. The Court is capable of more discriminating judgment than to insist on its newly fashioned doctrine in a case like Street's where it is so clear that there was at least a conviction for a public burning of the American flag.

The Court is obviously wrong in reversing the judgment below because it believes that Street was unconstitutionally convicted for speaking. Reversal can follow only if the Court reaches the conviction for flag burning and finds that conviction, as well as the assumed conviction for speech, to be violative of the First Amendment.[3] For myself, without the benefit of the majority's thinking if it were to find flag burning protected by the First Amendment, I would sustain such a conviction. I must dissent.

MR. JUSTICE FORTAS, dissenting.

I agree with the dissenting opinion filed by THE CHIEF JUSTICE, but I believe that it is necessary briefly to set forth the reasons why the States and the Federal Government have the power to protect the flag from acts of desecration committed in public.

If the national flag were nothing more than a chattel, subject only to the rules governing the use of private personalty, its use would nevertheless be subject to certain types of state regulation. For example, regulations concerning the use of chattels which are reasonably designed to avoid danger to life or property, or impingement upon the rights of others to the quiet use of their property and of public facilities, would unquestionably be a valid exercise of police power. They would not

---

[3] Arguably, under today's decision any conviction for flag burning where the defendant's words are critical to proving intent or some other element of the crime would be invalid since the conviction would be based in part on speech. The Court disclaims this result, but without explaining why it would not reverse a conviction for burning where words spoken at the time are necessarily used to prove a case and yet reverse burning convictions on precisely the same evidence simply because on that evidence the defendant might also have been convicted for speaking. The Court's seemingly narrow holding may be of potentially broader application, particularly in view of *Thomas* v. *Collins* as now rewritten by the Court.

necessarily be defeated by a claim that they conflicted with the rights of the owner of the regulated property. See, *e. g., Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365 (1926); *Berman* v. *Parker,* 348 U. S. 26 (1954).

If a state statute provided that it is a misdemeanor to burn one's shirt or trousers or shoes on the public thoroughfare, it could hardly be asserted that the citizen's constitutional right is violated. If the arsonist asserted that he was burning his shirt or trousers or shoes as a protest against the Government's fiscal policies, for example, it is hardly possible that his claim to First Amendment shelter would prevail against the State's claim of a right to avert danger to the public and to avoid obstruction to traffic as a result of the fire. This is because action, even if clearly for serious protest purposes, is not entitled to the pervasive protection that is given to speech alone. See *Cantwell* v. *Connecticut,* 310 U. S. 296, 303–304 (1940). It may be subjected to reasonable regulation that appropriately takes into account the competing interests involved.

The test that is applicable in every case where conduct is restricted or prohibited is whether the regulation or prohibition is reasonable, due account being taken of the paramountcy of First Amendment values. If, as I submit, it is permissible to prohibit the burning of personal property on the public sidewalk, there is no basis for applying a different rule to flag burning. And the fact that the law is violated for purposes of protest does not immunize the violator. *United States* v. *O'Brien,* 391 U. S. 367 (1968); see *Giboney* v. *Empire Storage & Ice Co.,* 336 U. S. 490 (1949).

Beyond this, however, the flag is a special kind of personalty. Its use is traditionally and universally subject to special rules and regulation. As early as 1907, this Court affirmed the constitutionality of a state statute making it a crime to use a representation of the United

States flag for purposes of advertising. *Halter* v. *Nebraska,* 205 U. S. 34 (1907). Statutes prescribe how the flag may be displayed; how it may lawfully be disposed of; when, how, and for what purposes it may and may not be used. See, *e. g.,* 4 U. S. C. § 3; 56 Stat. 377, c. 435, 36 U. S. C. §§ 172–177. A person may "own" a flag, but ownership is subject to special burdens and responsibilities. A flag may be property, in a sense; but it is property burdened with peculiar obligations and restrictions. Certainly, as *Halter* v. *Nebraska, supra,* held, these special conditions are not *per se* arbitrary or beyond governmental power under our Constitution.

One may not justify burning a house, even if it is his own, on the ground, however sincere, that he does so as a protest. One may not justify breaking the windows of a government building on that basis. Protest does not exonerate lawlessness. And the prohibition against flag burning on the public thoroughfare being valid, the misdemeanor is not excused merely because it is an act of flamboyant protest.