Chief Judge Fuld (dissenting).
I cannot agree with the majority that sufficient legitimate public interest is served by preventing the sale and exhibition of works of art—such as those which formed the predicate for the conviction of the defendant Radich — to justify interference with his right to free expression.
The defendant was the proprietor of a second-floor art gallery on Madison Avenue in New York City. He exhibited for sale seven sculptures, termed ‘ ‘ constructions, ” by an artist named Marc Morrel, in which the latter made use of American flags, or what appeared to be parts of such flags, in various provocative shapes and forms to express protest, particularly against *126 the Vietnam War. (See Life Magazine, March 31, 1967, p. 22.) The defendant was charged with defiling and casting contempt upon the flag of the United States, in violation of section 1425 (subd. 16) of the former Penal Law.[1]
At the trial, the Art News Editor of the New York Times testified that he considered the sculptures or constructions to be works of art, more specifically, a form of ‘ ‘ protest art ’ ’ which (he added) was in line with established artistic tradition. The defendant also testified; observing that this “ protest art ” was exemplified by the works of such artists as Michelangelo, Goya and Picasso, he went on to say that, although the works express a political viewpoint, neither he, nor the artist intended to defile or cast contempt upon the flag. It was his belief, he asserted, that the artist, far from intending to do so, was seeking, rather, to convey the idea that others were contemning the flag by committing aggressive acts in its name.
The court, in affirming the conviction, places primary reliance upon People v. Street (20 N Y 2d 231, revd. on other grounds, *127 394 U. S. 576) in which we held that the State may legitimately circumscribe certain acts which are contemptuous of the flag. (See People v. Street, 24 N Y 2d 1026, 1028.) However, there is nothing in our opinion in that case which suggests that the mere fact that a person chooses to express himself by other than verbal means removes him entirely from the protections of the First Amendment. On the contrary, we wrote as follows (20 N. Y. 2d, at p. 235):
“ It is the teaching of the cases that the constitutional guarantee of free speech covers the substance rather than the form of communication and that the right to employ a particular mode of expression will be vindicated only if it has been outlawed, not because of any legitimate State interest, but solely for the purpose of censoring the underlying idea or thought.”
In other words, in the absence of a showing that the public health, safety or the well being of the community is threatened, the State may not act to suppress symbolic speech or conduct having a clearly communicative aspect, no matter how obnoxious it may be to the prevailing views of the majority. (See, e.g., Tinker v. Des Moines School Dist., 393 U. S. 503, 505, 509; see, also, Note, 68 Col. L. Rev. 1091; cf. Cowgill v. California, 396 U. S. 371, per Harlan, J., concurring in dismissal of appeal.)
Quite obviously, the act which was prosecuted in the Street case — the public burning of a flag on a street corner in a section of Brooklyn at a time when feelings undoubtedly ran high following the shooting of James Meredith—posed a threat to public order which the State could legitimately act to prevent. Indeed, in Street, we likened the public mutilation of the flag to “ shouting epithets at passing pedestrians ” (20 N Y 2d, at p. 237), a situation patently fraught with danger to the public peace. The same may not, however, be said of the art forms which the defendant before us displayed in the quiet surroundings of his upstairs art gallery on Madison Avenue in midtown Manhattan. In our modern age, the medium is very often the message, and the State may not legitimately punish that which would be constitutionally protected if spoken or drawn, simply *128 because the idea has been expressed, instead, through the medium of sculpture.
Unlike the situation in the recent ease of Cowgill v. California (396 U. S. 371, supra),[2] the artist in the present case unquestionably made use of the flag for the purpose of expressing his political philosophy or views, his dissatisfaction with, and opposition to, the Vietnam War and other activities carried on by the Government. The challenged “ constructions ” were, in effect, but three-dimensional political cartoons. It is quite true that one’s political motives may not be relied upon to justify participation in an activity which is otherwise illegal. But it is equally true that an activity which is otherwise innocent may not be treated as criminal solely because of its political content.
Subdivision 16 expressly exempts from prosecution the display of the flag in or on an “ ornamental picture ” and, presumably, this exemption would apply to other forms of art as well. It is evident that the only reason why these works of Morrel were singled out for prosecution was not because the flag was used in the sculptures but solely because of the particular political message which those sculptures were intended to convey. In a very real sense, therefore, it was not the artist’s act of making use of the flag which is being punished but solely the protest or the political views he was seeking thereby to express.
I have spoken principally of the artist who made the constructions in-questions. There is even less justification for proceeding against the owner of the gallery in which the works were being exhibited for sale, particularly in view of the absence of any proof that he himself actually intended to defile or cast the flag in contempt. Although it is true that intent need not be an element of a crime—provided it be considered malum prohibitum— this is not the case where the challenged conduct involves the expression of political views. The First Amendment is designed not merely to prevent prosecutions but to *129 actively encourage and foster the free dissemination of ideas. Thus, even activity which is not, in itself, subject to the protection of the First Amendment may not be prosecuted in a manner which will have an inhibiting effect upon the free dissemination of ideas. (See, e.g., Smith v. California, 361 U. S. 147, 152 et seq.)[3]
In sum, I do not understand how it may reasonably be said that the mere display of Morrel’s constructions in an art gallery, distasteful though they may be, poses the type of threat to public order necessary to render such an act criminal. This-prosecution, in my view, is nothing more than political censorship falling far outside our holding in People v. Street. It should not be constitutionally sustained.
The judgment appealed from should be reversed.
Judges Scileppi, Bergan, Breitbl and Jasen concur with Judge Gibson; Chief Judge Fuld dissents and votes to reverse in a separate opinion in which Judge Burke concurs.
Judgment affirmed.

. Insofar as relevant, subdivision 16 of section 1425 (now General Business Law, § 136) provided:
“ 16. Any person, who ** * *
“ d. Shall publicly mutilate, deface, defile, or defy, trample upon, or cast contempt upon * 58 * by * * * act, or • • •
“ f. Shall publicly carry or display any emblem, placard or flag which casts contempt, either by word or act, upon the flag of the United States of America, * * * • • *
“ Shall be deemed guilty of a misdemeanor; * * *
“ The words flag, standard, color, shield or ensign, as used in this subdivision or section, shall include any flag, standard, color, shield or ensign, or any picture or representation, of either thereof, made of any substance, or represented on any substance, and of any size, evidently purporting to be 6 * * said flag, standard, color, shield or ensign, of the United States of America 18 * * or a picture or a representation * * * thereof, upon which shall be "shown the colors, the stars, and the stripes, in any number of either thereof, or by which the person seeing the same, without deliberation may believe the same to represent the flag, colors, standard, shield or ensign .of the United States of America * * *.
“ This subdivision shall not * * be construed to apply to a[n] * * * ornamental, picture * * * on * * * which shall be printed, painted or placed, said flag, standard, color, shield or ensign disconnected and apart from any advertisement.”

. In Gowgill, where there was no showing that the use of a eut-up, mutilated American flag was motivated by a desire to express a particular philosophy or point of view—where, in othtr words, the display had no “ recognizable communicative aspect ”— the court held that no substantial First Amendment question was presented. (See Cowgill v. California, 396 U. S. 371, supra.)

. In the Smith case (361 U. S. 147), the court held that a bookseller could not be prosecuted for the sale of obscene material unless he was shown to be aware of the contents of the books. The rationale behind that decision—-that absolute liability for the dissemination of unprotected material would chill the distribution of legitimate works which were subject to constitutional protection — is, it seems to me, equally applicable here.