THE STATE OF OHIO v. LISKA.

(No. 51842—Decided December 1, 1970.)

Municipal Court of Berea.

*Mr. Halbert Whitaker,* prosecuting attorney, for plaintiff.

*Mr. Nelson Karl,* for defendant.

TODIA, J. Defendant was apprehended while operating his automobile for having on display in his rear window a decal measuring approximately 3'' x 5'' which in

all respects appeared to be an American flag except the blue field contained a white "peace symbol" rather than stars. Neither words or actions of defendant nor other words or symbols displayed on the car colored the circumstances in any way.

Defendant has chosen to attach considerably more importance to this case than appears warranted by the facts. Wisdom suggests that by ignoring transgressions which are sometimes even outrageous, the problem evaporates. Defendant's acts are far from outrageous and appear quite innocuous.

The outcome of this case is being watched by at least fifty spectators who appeared at the trial. The spectators were mostly of defendant's age group, that is, late teens and early twenties, so the court presumes that they were in general support of defendant's position that no crime was committed. They deserve an answer to the court's action and thus, the court feels constrained to contradict its own advice and give this case far more attention than it deserves.

The American Civil Liberties Union appeared on behalf of defendant and obviously conceives itself as standing for the rights of the individual against state action. The American Civil Liberties Union no doubt wants to make this a test case. Defendant's lawyers presented their argument as to the applicable law at length and very capably on trial and in a 16-page study of the legal questions in a brief to the court. The prosecutor submitted no authorities except the statute defendant was charged with violating and no argument.

We have here solely a matter of principle. This defendant fades into obscurity as an individual and becomes prominent only as a vehicle to challenge the constitutional and legal principles involved in the flag desecration law. It is paradoxical that in the cause of individual rights, the individual becomes insignificant.

Defendant was charged with violation of R. C. 2921.05 which reads as follows:

"Desecrating flag of this state or the United States. No person shall contemptuously print, paint or place a

word, figure, mark, picture, or design, upon a flag, standard, color, or ensign of the United States, or of this state, or cause it to be done, or expose or cause to be exposed, such flag, standard, color, or ensign upon which is printed, painted, or placed, or to which is attached or appended a word, figure, mark, picture, or design. No person shall manufacture or have in possession an article of merchandise upon which is placed or attached a contemptuous representation of such flag, standard, color, or ensign, or publicly mutilate, burn, destroy, defile, deface, trample upon, or otherwise cast contempt upon such flag, standard, color, or ensign.

"Whoever violates this section shall be fined not less than one hundred nor more than one thousand dollars or imprisoned not less than thirty days nor more than one year, or both.

"As used in this section 'flag,' 'standard,' 'color,' or 'ensign' includes any flag, standard, color, or ensign or a picture or representation thereof, made of or represented on any substance, and purporting to be a flag, standard, color, or ensign of the United States, or this state or a picture or representation thereof, upon which is shown the colors, the stars, and the stripes in any number thereof, or which might appear to represent a flag, standard, color, or ensign of the United States or of this state."

Defendant urges three grounds for dismissal of the charge or acquittal:

(1) That Section 2921.05 of the *Revised Code of Ohio* violates the First and Fourteenth Amendments of the *United States Constitution* which guarantee freedom of speech.

(2) That said statute is "void for vagueness" and

(3) That defendant did not intend a contemptuous act.

The court shall add an issue implied in defendant's brief:

(4) Do the facts of this case constitute contemptuous conduct regardless of defendant's intent?

Considerable evidence was adduced at the trial concerning defendant's political activism and beliefs. Suffice

it to say that defendant's expressed beliefs and attitudes do not conform with what is commonly thought to be the standards of the "over 30" population.

The court finds defendant's stated views at least naive and an unconscious and unthinking mouthing of political jargon of the new left. Defendant's "pacifism," for instance, seemed only to apply to the Viet Nam war. The court can understand and admire true pacifism which applies to all wars and dealings among neighbors as well as foreigners. But, the court is at a loss to explain pacifism as to Viet Nam only, as having any relation to promoting true peace in the world.

It is not the court's purpose to criticize defendant's views, to mock him, or to restrict his freedom to say anything he wants. Since defendant raised the "political views" on trial and discussed same at great length, the court does assure defendant that defendant's views have nothing whatever to do with this decision, however much the court disagrees with him and would urge him to rethink his values before he becomes hopelessly enmeshed in political jargon and an illogical party line.

The American Civil Liberties Union has submitted a very complete list of authorities from the United States Supreme Court and a number of states countrywide. This court has found no other authorities.

1. Does the statute violate the First and Fourteenth Amendments of the *United States Constitution* guaranteeing freedom of speech. We think it does not. The distinction must be made between "speech" and "act" or "symbolic act." Speech itself, no matter how gross, detestable and contemptuous of the flag, is permitted under our constitutional guarantees. Freedom of speech also extends to certain signs and written communications which convey thoughts and messages. Defendant is free to use his "peace" symbol anywhere he wants, to write his opinion of what the flag means and to display such writings and symbols and be protected.

There are an infinite variety of ways to express one's political views. Does the Constitution require that defendant's freedom of speech be protected by permitting

him to use the American flag as a scratch pad to write his views? The opinion of this court is an emphatic *no!*

The American flag is a symbol. The American people have a right to develop such a symbol of nationhood and work to the end that the symbol receives respect and promotes a feeling of unity, patriotism and national pride. Laws have been promulgated which positively encourage respect and set forth standards of usage. (Title 36, Sections 173 through 178, U. S. Code.) These laws are not punitive in nature and carry no criminal or civil sanctions.

We note with interest Title 36, Section 176:

"Disrespect to flag prohibited. No disrespect should be shown to the flag of the United States of America; *the flag should not be dipped to any person or thing.*" (Emphasis added.)

The flag is held in such high regard that it shall not even be dipped to the president. The president is required to respect the flag as are all of us, not the other way around.

We recall with considerable pride the 1936 Olympic games in Berlin. Hitler's rantings of supremacy of the Aryan Race were shattered by the American Negro, Jesse Owens, through a sterling performance in the games. Hitler was greatly embarrassed and incensed also over the refusal of the American representatives to dip the American flag in tribute to Hitler.

Title 4, Section 3, U. S. Code, does undertake to protect our flag from mutilation, advertising purposes, etc., and attaches a criminal penalty to such specific misuses.

The American flag means many things to many people. Today, some groups on the extreme right of the political spectrum have created so much super-patriot fuss that a middle-of-the-roader sometimes feels reluctant to display the flag for fear of being identified with extreme groups.

The American flag cannot mean the same to everyone but it is our national symbol and each one of us gives it its changing meaning and symbolism as times, attitudes and national goals change.

Some people in our society have no regard for the American flag whatsoever. That is their privilege. They are not forced to wear it, display it, salute it or recognize

it in any way. All the state of Ohio asks is that if you do not like the flag, do not deface it or mistreat the symbol that most people in the state respect.

For those who do not approve of the American flag, there are an infinite number of designs they can use to symbolize their own ends. Let them make their own flags. Let their symbols compete in the market place for the adherence of men's minds.

Assume that the defendant had developed a symbol or flag of his own and displayed it on his car. The state could not deprive him of the symbol or flag. If someone who disagreed with the symbol defaced it or altered it, we have both civil and criminal laws to protect such private property.

However, we are urged here to determine that the state and federal government have no way to prevent the defacing of the national symbol. American citizens are entitled to have their national symbol protected. If certain citizens disagree with the symbol, let them change it by legislation, or let them create some other and different symbol for their own use. But, they shall not be permitted to appropriate for their own use a distortion of the national symbol and then cry freedom of speech with regard to what is essentially a property right.

No United States Supreme Court case brought to this court's attention has directly involved the question of constitutionality of laws of flag desecration. The closest case in point is *Street* v. *State of New York* (April 1969), 394 U. S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354, which struck down as unconstitutional a New York law which prohibited not only acts of desecration but also *speech* which was contemptuous of the flag. The decision was based on freedom of *speech* which was disrespectful and, therefore, does not help us with respect to acts.

Chief Justice Earl Warren was noted for his liberal views toward human and civil rights and was a person the radical right wanted to impeach. Chief Justice Warren dissented for the reason that the basic question, that of punishing acts of desecration of the flag, was avoided by the majority of the court.

At Page 604:

"In a time when the American flag has increasingly become an integral part of public protests, the constitutionality of the flag-desecration statutes enacted by all of the states and Congress is a matter of the most widespread concern. Both those who seek constitutional shelter for acts of flag desecration perpetrated in the course of a political [605] protest and those who must enforce the law are entitled to know the scope of constitutional protection. The court's explicit reservation of the constitutionality of flag-burning prohibitions encourages others to test in the streets the power of our states and National Government to impose criminal sanctions upon those who would desecrate the flag.

"I believe that the states and the Federal Government do have the power to protect the flag from acts of desecration and disgrace. But because the court has not met the issue, it would serve no purpose to delineate my reasons for this view. However, it is difficult for me to imagine that, had the court faced this issue, it would have concluded otherwise. Since I am satisfied that the constitutionality of appellant's conduct should be resolved in this case and am convinced that this conduct can be criminally punished, I dissent."

There is no doubt that the Supreme Court in 1969, had it faced the issue head on, would have upheld the flag desecration statutes as they apply to *acts* but not to *speech*.

In *Halter* v. *Nebraska* (1907), 205 U. S. 34, the Supreme Court upheld a statute which prohibited the use of the flag for advertising purposes as on a beer bottle.

To digress for a moment from the issue at hand and to illustrate this court's views on the importance of freedom of *speech*, we quote with approval from *West Virginia* v. *Barnette*, 319 U. S. 624, 87 L. Ed. 1628, at page 633:

"* * * It is now a commonplace that censorship or suppression of expression of opinion is tolerated by our Constitution only when the expression presents a clear and present danger of an action of a kind the state is empowered to prevent and punish. To sustain the compulsory flag salute, we are required to say that a Bill of

Rights which guards the individual's right to speak his own mind left it open to public authorities to compel him to utter what is not in his mind. * * * to enforce (Bill of Rights) is not to choose weak government over strong government. It is only to adhere as a means of strength to individual freedom of mind in preference to officially disciplined uniformity for which history indicates a disappointing and disastrous end. * * * the very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty and property, to free speech, free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections. * * * these principles (Bill of Rights) grew in soil which also produced a philosophy that the individual was the center of society, that his liberty was attainable through mere absence of governmental restraints, and that government should be entrusted with few controls and only the mildest supervision over men's affairs. * * * as governmental pressure toward unity becomes greater, so strife becomes more bitter as to whose unity it shall be. * * * ultimate futility of such attempts to compel coherence is the lesson of every such effort from the Roman drive to stamp out Christianity as a disturber of its pagan unity, the Inquisition, as a means to religious and dynastic unity, the Siberian Exiles as a means to Russian unity, down to the fast failing efforts of our present totalitarian enemies. Those who begin coercive elimination of dissent soon find themselves exterminating dissenters. Compulsory unification of opinion achieves only the unanimity of the graveyard. It seems trite but necessary to say that the First Amendment to our Constitution was designed to avoid these ends by avoiding these beginnings. * * * the case is made difficult not because the principles of its decision are obscure but because the flag involved is our own. * * * to believe that patriotism will not flourish if patriotic ceremonies are voluntary and spontaneous instead of a compulsory routine is to make an

unflattering estimate of the appeal of our institutions to free minds. * * * Freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order. If there is any fixed star in our constitutional constellation, it is that not official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.''

*Barnette* involved compulsory salute of the flag not a direct act of distorting the national symbol.

The turmoil currently seen in this country in all sectors, including the college campus of which defendant is a part, is new and unique to the new generation. Similar turmoil, perhaps regarding other issues, has regularly plagued this country from its inception and seems to arrive about once each generation.

This generation seems to have created a mania concerning the American flag which ranges from burning and mutilating the flag for political protest to ''mild political statement'' to the use of stars and stripes in the clothing fashions. It is our opinion the flag deserves respect and respect should be encouraged in every way possible. However, this mania will pass in time and perhaps will pass much quicker if moderation is applied rather than violently repressive measures.

2. We do not subscribe to the argument that the statute is void for vagueness. Very simply and in paraphrase, the statute says no person shall print or place a word, mark, picture or design on a flag and shall not display such a flag. That is clear language.

3. Defendant urges that he did not have the necessary criminal intent and, therefore, is not guilty. A fundamental rule is that everyone is presumed to know the law although obviously everyone does not and can not know all the laws. A mistake or lack of knowledge of an essential fact concerning an offense can defeat criminal intent, but a mistake or lack of knowledge of what a law says or

18

means is not a recognized defense. Defendant knew that the object he purchased and intentionally and knowingly displayed on his car looked like an American flag in all respects save the "peace symbol" in the blue field. He is held to the knowledge that this indeed is an American flag which bears a printed mark, figure or design. Intent is implied in the word "contemptuously" and does not permit an interpretation as accidental. Defendant's act was intentional as opposed to accidental.

4. Does defendant's act constitute a "contemptuous" act?

Webster's Collegiate Dictionary, Fifth Edition, gives the following definitions:

Contemptuous — "Expressing contempt or disdain. Synonym—haughty, insolent, supercilious, contumelious."

Contempt — "(1) Act of contemning; the feeling with which one regards that which is esteemed mean, vile, or worthless; scorn. Synonym—Derision, contumely."

Worthless — "Destitute of worth; useless; waste."

Vile — "(1) Of small account; low; mean; worthless; base."

Mean — "Adjective: (1) Destitute of distinction; common; humble. (2) Destitute of power or acumen; ordinary. (3) Of little value; of poor quality; shabby; contemptible. (4) Ignoble; base."

It is clear from the evidence that the defendant does not regard the American flag as a valid symbol. The American government does not now conform to defendant's ideas of foreign policy, particularly in Viet Nam. Defendant seeks to demean the American flag, lower it in the esteem of his fellow countrymen, debase it, make it common, declare it as worthless, because to him it represents government policy rather than the nation. The act of debasing the flag and making it appear worthless is an act of contempt. As a matter of principle, we feel this would be true no matter what word, symbol or design, other than the "peace symbol" was affixed to the flag. It is demeaning to use the flag for mixed symbolism. It would be equally demeaning in this court's view to superimpose the president's picture or a great national hero's

picture on the flag. To display two symbols side by side is another matter.

This court is not convinced that the defendant's conduct was a very serious matter but it is nonetheless a crime and must be so treated. We are aware that the decal used was a manufactured item and that lapel pins and medalions of similar design are freely marketed even by large department stores. There are other types of decals which in various forms are distortions of the American flag, such as the larger round "peace symbol" with stars and stripes arranged within the segments of the "peace symbol." To encourage proper respect for our flag, we urge that those now displaying distortions of our flag dispose of them. We do not wish this opinion to serve to generate a wholesale police roundup of everyone who displays a similar symbol on his person, car or other object. We trust the police will use discretion in the matter and allow the current fads to fade gradually into obscurity. If anything, the manufacturers and retailers of these distortions should be advised to cease and desist and be apprehended if they do not, since, after all, they are creating commercial profit out of disrespect for our national flag.

Therefore, defendant is found guilty as charged and fined $100 and costs. Suspended pending appeal.