**ISKCON OF POTOMAC, INC.,
et al., Plaintiffs,**

v.

**James M. RIDENOUR, et al., Defendants.**

**Civ. A. No. 92–1092(HHG).**

United States District Court,
District of Columbia.

Aug. 6, 1993.

David M. Liberman, Los Angeles, CA, Durvasula S. Sastri, Shamala J. Bhat, Silver Spring, MD, for plaintiffs.

Richard G. Robbins, Asst. Sol., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

This is an action for an injunction brought by the International Society of Krishna Consciousness [1] and one of its members (Krishnas) to permit certain activities on the Mall in Washington, D.C., notwithstanding regulations issued by the National Park Service.

### I

Plaintiffs obtained a permit from the Park Service in May 1989 to hold a so-called Krishnafest program on the Mall across from the Air and Space Museum. This program, which may last as long as twenty-one days, includes the public singing of Krishna prayers, the distribution and sale of audiocassettes and prayer beads, and the solicitation of contributions for the support of Krishna activities. The permit was routinely renewed until March 1991 when the plaintiffs were informed that Park Service regulations forbade the dissemination of audiocassette tapes

---

1. Krishna Consciousness is a religion within the theological umbrella of Bhakti Hinduism. *ISKC* *v. Barber,* 650 F.2d 430, 433 (2d Cir.1981).

and jewelry, including prayer beads. The Park Service also prohibits solicitations. *See* 36 C.F.R. § 7.96(h) and (j) (1991). Since the Krishna's activities were in violation of these restrictions, their permit to engage in the program on the Mall was revoked. Following an administrative appeal, the revocation was sustained. This action followed, and the matter is now before the Court on cross-motions for summary judgment.[2]

## II

The government's defense of the regulations, while couched in varying terminology, in essence presents but a single rationale—that the Mall should be protected from the disruptive activities sought to be engaged in by the Krishnas. Thus, the government contends (1) that the parks should be preserved in an attractive and intact condition, readily available to the people who wish to enjoy them; (2) that the aesthetic aspects of the Mall and other Park Service property in the Washington area would be undermined by the Krishnas' solicitation; and (3) that visitors to the Mall and other parks must be protected from being harassed or bothered. Memorandum in support of Motion to Dismiss at 12–26. In short, the Park Service considers solicitation by the Krishnas a nuisance that would be a blight on the beautiful park property and might be resented by visitors to the Air and Space Museum and its environs, as well as to other parks in the National Capital area.

As will be seen below, none of these purposes presents a valid basis for the denial of the requested activities of the Krishnas. As our Court of Appeals has stated,

> [t]he use of parks for public assembly and airing of opinions is historic in our democratic society, and one of its cardinal values. Public assembly for First Amendment purposes is surely a 'park use' as any tourist or recreational activity.

*A Quaker Action Group v. Morton*, 516 F.2d 717, 724 (D.C.Cir.1975). Similarly, the "public expression of ideas may not be prohibited merely because the ideas themselves are offensive to some of their hearers." *Street v. New York*, 394 U.S. 576, 592, 89 S.Ct. 1354, 1366, 22 L.Ed.2d 572 (1969); *see also, NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982).

It does not detract in any way from the magnificent Air and Space Museum and the beautiful, largely pristine parks in Washington to conclude that, as between the values they embody, and the protection of the First Amendment to the Constitution, the latter cannot validly be relegated by government to second place. Indeed, it is clear that the blunt Park Service prohibition is in violation of settled law.

## III

There is no question but that the Mall area in Washington across from the Air and Space Museum is a public forum for protected speech. *See generally, Women Strike for Peace v. Hickel*, 420 F.2d 597 (D.C.Cir.1969). In fact, it is difficult to imagine an area more clearly established as a public forum than the Mall area in the Nation's Capital. It is also clear—and the government does not seriously contest[3]—that plaintiffs' activities are sufficiently communicative to be protected by the First Amendment. That, of course, does not end the inquiry, for it is also established that the government may, in appropriate circumstances, place reasonable restrictions on the time, place or manner of protected speech, as long as alternative means of communication are left open. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Heffron v. International Society of Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *CCNV v. Kerrigan*, 865 F.2d 382, 387 (D.C.Cir.1989).

As indicated, the dispute between the parties now essentially revolves around the request of the Krishnas for permission to distribute beads and audiotapes and to solicit voluntary donations on the Mall at the place

---

**2.** Initially plaintiffs sought a preliminary injunction, but by stipulation between the parties, the issues are being considered on their merits on the parties' dispositive motions.

**3.** Defendants' Motion to Dismiss at 6–7.

described above, and the denial of that request by the Park Service.[4]

As noted, regulations issued by the Park Service absolutely prohibit "soliciting or demanding gifts, money, goods or services." 36 C.F.R. § 7.96(h) (1991). Another regulation allows the sale or distribution of newspapers, leaflets, and pamphlets, 36 C.F.R. § 7.96(j) (1991), and, by a Park Service "enforcement guideline," that of bumper stickers buttons, posters, and T-shirts displaying messages directly related to a particular cause and activity. However, the guideline does not permit the sale or distribution, *inter alia*, of jewelry, records, and tapes. This case thus involves the issues (1) whether the ban on solicitations violates the First Amendment rights of the Krishnas, and (2) whether the prohibition on the sale by the members of the organization of beads and tapes violates the First Amendment.

■ With respect the solicitation issue, the government relies essentially on three recent decisions—*United States v. Kokinda*, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); *Lee v. ISKCON*, —— U.S. ——, 112 S.Ct. 2709, 120 L.Ed.2d 669 (1992); and *Henderson v. Lujan*, 964 F.2d 1179 (D.C.Cir. 1992). In the view of this Court, none of these precedents is directly applicable here. Indeed, to the extent that they are pertinent at all, they support plaintiffs' position rather than that of the government.

In *Kokinda, supra*, the Supreme Court considered the issue of solicitation on premises of the U.S. Postal Service. Holding that, although solicitation is a recognized form of speech protected by the First Amendment, the principal opinion authored by Justice O'Connor stated that it "is not unreasonable to prohibit solicitation on the ground that it is unquestionably a particular form of speech that is disruptive of business. Solicitation impedes the normal flow of traffic.... The Postal Service ... has learned from [its] experience ... that postal facility managers were distracted from their primary jobs by the need to expend considerable time and energy fielding competing demands for space and administering a program of permits and approvals." 497 U.S. at 733–34, 110 S.Ct. at 3123–24. This rationale is not dispositive in any way of the request of the Krishnas for permission to solicit in the open air on the Mall where no government business is being transacted.

In *ISKCON v. Lee, supra*, the Supreme Court held that an airport terminal operated by a public authority is not a public forum, and a ban on solicitation must therefore only satisfy a reasonableness standard. —— U.S. at —— —— ——, 112 S.Ct. at 2705–08. By contrast, the government has here conceded that the National Mall is a public forum. Defendants' Reply at 5 n. 5. Thus, the *Lee* decision is likewise inapplicable.

The government's reliance on *Henderson* is even more misplaced, not only because of the factual differences between that case and this, but even more so because the court's language actually supports the Krishnas' position. In *Henderson*, the Court of Appeals concluded that the distribution of leaflets at the Vietnam Veterans Memorial could properly be prohibited because the "tranquil, contemplative mood at the Memorial wall—perhaps 'awe' captures it better—would be affected by the activity of any leafletters regardless of their message." 964 F.2d at 1184. No comparable mood of awe exists on the Mall near the Air and Space Museum, with its thousands of joyful tourists, its dozens of hot dog vendors, and the commotion that exists almost around the clock in the Museum's vicinity. Further, the court in that case ultimately went on to hold that the Park Service's restriction on the free distribution of literature on the sidewalks adjacent to the Vietnam Memorial—a place similar to the Mall area near the Air and Space Museum—violated the First Amendment. The court pointed out that the sidewalks where the distribution of literature was to take place would have too minimal an impact on tranquility at the Memorial itself to justify the ban's effect on speech. In short, to the extent that this decision is applicable here, its thrust is to point to the invalidity of the Park Service regulations.

Other precedent further cements the soundness of the arguments made by the

---

**4.** Interestingly, the permit was revoked not at a high level but by a Park Police sergeant.

plaintiffs. It is well settled that charitable appeals for funds, on the street or door-to-door, involve a variety of speech interest that are within the protection of the First Amendment. *Village of Schaumburg v. Citizens for Better Environment*, 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980). As the Supreme Court stated in that case,

> Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be under taken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease.

444 U.S. at 632, 100 S.Ct. at 833–34. *See also, Cornelius v. NAACP Legal Defense & Education Fund*, 473 U.S. 788, 798, 105 S.Ct. 3439, 3446–47, 87 L.Ed.2d 567 (1985).

According to the Krishnas, the chanting and prayers and the interactions involved in a request for donations uniquely serve the function of helping the practitioners to become God-conscious. For that reason, the solicitations are patently entitled to First Amendment protection, not only on a speech basis but also on a religion basis. *See Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943).

In light of this precedential background, it cannot be said that the regulation prohibiting all solicitation is content neutral and narrowly tailored, and that it leaves open alternative channels for communication of the information (*see infra*), as it must do to pass constitutional muster. *See Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). A principal defect inherent in the regulation is that it singles out solicitation—the form of communication associated with the religious activity of the Krishnas—while permitting many other forms of communication potentially as disruptive of the Mall atmosphere as the Krishna activities.

## IV

The invalidity of the Park Services' regulations is perhaps even more clearly apparent when its ban on the sale by the Krishnas of such items as religious beads [5] and audio cassettes [6] is considered. As noted above, the Park Service allows the sale of bumper stickers, posters, T-shirts, and buttons in the same area where it forbids the sales sought to be effected and the solicitations sought to be received by the Krishnas. It is difficult to discern any underlying, valid rationale for these distinctions,[7] as it is impossible to conclude that the prohibitions are content-neutral and narrowly tailored. It is not apparent what alternative channels for communication by the Krishnas the Park Service has in mind if the agency considers the National Mall opposite the Air and Space Museum to be inappropriate. In fact the government's rationale for the prohibitions—that the Park Service regulations "are intended to preserve the Mall *and other parks* for visitors" (Memorandum in Support of Motion to Dismiss at 14) (emphasis added) suggests that the government regards no parkland suitable for the Krishna's First Amendment activities.

The Park Service regulations are plainly invalid as violative of the Constitution and the applicable precedents.

For the reasons stated, defendants' motion for summary judgment is denied, and that of plaintiffs is granted, and further, a judgment is being entered contemporaneously herewith prohibiting defendants from enforcing sections 7.96(h) and (j) of the Code of Federal Regulations against the Hare Krishnas for these activities.

---

5. The Park Service regards the Krishna beads as jewelry, when in fact they are similar in function to the rosary beads of Roman Catholics.

6. Hindu music is an integral part of the Hindu religion. 9 Encyclopedia of Religion and Ethics 44 (James Hastings ed. 1955).

7. The government's attempt to equate the ban on the sale of such items as religious beads with the ban on overnight camping in Lafayette Park is far-fetched.

## ORDER

Upon consideration of the motions, the memoranda in support thereof, in opposition and in reply thereto, it is this 6th day of August, 1993

ORDERED that plaintiffs' motion for summary judgment is granted; and it is further

ORDERED that defendant's cross motion to dismiss is denied; and it is further

ORDERED that defendants and their agents and employees and all those in concert with them are prohibited from enforcing sections 7.96(h) and (j) of the Code of Federal Regulations in the area of the Mall adjacent to the Air and Space Museum.